STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. W. CURTIS GROTHMANN, DEFENDANT-APPELLANT.

Argued June 1, 1953—Decided June 25, 1953.

*Mr. Louis Winer* argued the cause for appellant.

*Mr. John D. Collins, County Prosecutor,* argued the cause for the State.

The opinion of the court was delivered by

HEHER, J. Defendant was convicted on two indictments, numbered 47 and 48, charging that he induced a female child of 12 years of age in the first case, and another such child of 9 years in the second, "to submit to the doing" of a specified "act which would tend to debauch * * * and impair the morals" of the child, contrary to *N. J. S.* 2A:96–3, for which *R. S.* 2:117–6.1 was later substituted without objection. The indictments were tried together. Each included a count for assault and battery on the particular child; but that count was dismissed by the county judge before submission of the cases to the jury.

The Appellate Division of the Superior Court affirmed the judgments of conviction. 24 *N. J. Super.* 190 (1953). We certified the causes for appeal on defendant's motion.

The basic question is whether defendant's constitutional rights were infringed by amendments of the indictments directed by the county judge upon the close of the State's case at the instance of the county prosecutor.

Indictment No. 47 alleged the commission of the offense on November 1, 1950. No. 48 charged in several counts three separate and distinct offenses involving the younger child on the same day: the first in Boonton, without a more particular designation of the place; the second, in a bedroom of defendant's home in Boonton; and the third, in the cellar of his home. No. 47 was amended to state the offense was committed "on a date between April 1, 1951, and May 8, 1951"; No. 48 was amended to read that the offense occurred "on a date between November 1, 1950 and May 8, 1951." There was an acquittal on the second and third counts of the latter indictment.

The Appellate Division said that the testimony of the children "disclosed without objection the recurrent commission" by the accused "of such unlawful practices at intervals over a period of the two preceding years," and in consequence

the indictments were amended, but as amended "neither indictment charged the occurrence of more than one offense." And reference was made to the instruction given the jury that "the Prosecutor is tied down to a proof of crime as charged in the indictment to a date which falls within those dates as I outlined them."

But the effect of the amendments and the charge was to render the accused liable to conviction for an offense against each child not the subject of an indictment by a grand jury in accordance with the guaranty of *Article I, paragraph* 8 of the *State Constitution of* 1947 that no person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, save in certain cases not here pertinent. · The amendments, made at the close of the State's case on the prosecutor's motion, extended the time specification of the indictments to include in each at least two separate and distinct offenses committed, so the children testified, on days other than the day named in the indictment. One of the children testified that the accused had been "doing this to" her "around two or three years"; the other said on a preliminary examination that it occurred "almost every time" she "went in the car," but she testified at the trial that there were but two such offenses. As to indictment No. 47, the prosecutor said, on the argument of the motion to amend, that there were "two occasions," and "both" between April 1, 1951 and May 8, 1951; as to No. 48, he referred to the child's testimony that the offense was perpetrated "on numerous occasions, going back" to November 1950. And the judge charged that the jury's "sole duty" was to determine whether "a crime of the nature complained of in the indictment" occurred within the time covered by the amendment.

Objection to the course thus taken was seasonably made. ■ An indictment is amendable in form but not in substance. The substantive process is exclusively the grand jury's under the constitutional limitation cited *supra*. And an amendment in matter of form is not permissible if thereby the accused will suffer prejudice to his substantial rights.

By the early common law an indictment was not amendable. And this is still the federal rule with some modifications.

██ It is fundamental in the constitutional limitation that an indictment is not amendable by the court to charge an offense not found by the grand jury, either by a substitution of offenses or to supply substantive omissions. *State v. Startup,* 39 *N. J. L.* 423 (*Sup. Ct.* 1877). There is a basic distinction in this regard between continuous and non-continuous offenses. Crimes of the class now before us are not continuous in nature; and an indictment alleging such an offense on the 10th day of a particular month was held not amendable to charge the commission of the offense on the 1st and 3d days of the same month, for that would mean the inclusion of a crime for which the defendant "was not indicted by the grand jury"; it was a "grave fault" to "allow an amendment which in effect altered the indictment, in substance, by substituting for the date of June 10th, the day alleged therein on which the crime was committed, the dates of June 1st and 3d, thereby charging the defendant with the commission of two separate crimes of like character, in a single count, whereas the indictment of the grand jury was predicated only upon the commission of a single offense"; the amendment was "a substitution of two offenses for one which in effect was equivalent to adding a count to the indictment, and, hence, was prejudicial to the defendant's defense upon the merits of the case." *State v. Sing Lee,* 94 *N. J. L.* 266 (*E. & A.* 1920).

And in keeping with that principle, the old Supreme Court declared in a later case that the time specification of an indictment is amendable as related to form only and not of the essence, and the State "may prove any other date" of commission within the period prescribed by the statute of limitations, but where it appears, as it did appear in that case, that the State "deliberately directed the testimony to establish five different occasions on which a statutory rape was committed upon the prosecutrix, thus adducing *prima facie* proof of the commission of five distinct offenses, it would be an anomaly in the law to hold that a jury might

be at liberty to select any one of the alleged offenses on which no indictment was founded as a basis of its verdict." *State v. Pitman*, 119 *A.* 438 (*N. J. Sup. Ct.* 1922) (not included in the state reports). The rationale of the holding was that the indictment stated the "true date" of the commission of the offense laid to the accused "as found by the grand jury," and the case did not present an indictment "containing a wrong or impossible date," where the State could prove the "true date" and then have the indictment amended accordingly, but rather the presentation of testimony tending to show that the defendant committed the offense on the prosecutrix, "not only" on the date specified in the indictment, "but also on three other days" in the same month, an indefensible course of procedure, and so it was error to refuse to charge a request that an acquittal was required unless the jury were convinced that "this offense occurred on" the date stated in the indictment, since the accused was deprived of his constitutional right "to only answer for and defend against the crime of which he stood indicted by the grand jury." The refusal of the request, considered in the light of the charge regarding the five specific offenses shown by the testimony of the prosecutrix, was the equivalent of an instruction that the jury could predicate guilt of the offense "charged against him on the date mentioned in the indictment, even though  *  *  * not convinced" that the offense was committed "on that day, but was convinced  *  *  * that a statutory rape was committed on any of the four dates prior" to reaching the statutory age.

And in a case where the proofs tended to show at least two separate acts of carnal abuse of the girl by the defendant, the State contended that it was "entitled to have the jury pass upon the question of the guilt of the defendant as to each of these alleged acts, although only one of them was charged against him in the indictment," and the indictment was amended "to include both dates," one in each of two succeeding months; and the holding was, again following the principle of *State v. Sing Lee*, cited *supra*, that "the

substitution of two offenses for one was, in effect, to add a count to the indictment, and was, consequently, prejudicial to the defendant's defense upon the merits." *State v. Brown*, 103 *N. J. L.* 519 (*Sup. Ct.* 1927).

The accused cannot be tried for "two crimes under the charge of one." *Wharton's Criminal Evidence* (11*th* ed.), *sec.* 1039. An indictment "may not be disregarded or amended in order to permit a trial upon a crime not charged by the grand jury, but omissions in an indictment should be supplied or errors in description cured in order to show upon the record that accusation and trial are for the same crime." *People v. Bogdanoff*, 254 *N. Y.* 16, 171 *N. E.* 890, 894, 69 *A. L. R.* 1378 (*Ct. App.* 1930). The distinction is between the regulation of the mode of procedure and the substance of the constitutional rights secured under the grand jury system. *Commonwealth v. Snow*, 269 *Mass.* 598, 169 *N. E.* 542, 546, 68 *A. L. R.* 920 (*Sup. Jud. Ct.* 1930). And, as said in that case, one test to "determine whether the change made was material is whether judgment of conviction or acquittal on the indictment as drawn would be a bar to a new indictment drawn in the form in which it stood after the amendment."

It is the constitutional right of the accused in a criminal proceeding to be informed of the nature and cause of the accusation laid to him (1947 *Constitution, Article* I, *paragraph* 10) ; and the course of procedure taken in the case of *State v. Pitman* was held to be violative of this basic civil right. It is of the essence of the right that the accused be informed by the indictment in certain, definite and understandable terms of the crime charged to him, to enable him to prepare his defense and to be protected against double jeopardy. *State v. Morano*, 134 *N. J. L.* 295 (*E. & A.* 1946). *Vide, Wong Tai v. United States*, 273 *U. S.* 77, 47 *S. Ct.* 300, 71 *L. Ed.* 545 (1927). This in its very nature required sufficient particularity to identify the crime laid to the accused.

Where not of the essence of the offense, the specification of time in an indictment is amendable, unless that course

would prejudice the substantial rights of the accused, but never to "charge another or different offense" than that alleged. Such is the mandate of *Rule* 2:4–13, in conformance with the nature of the constitutional guaranty.

Here, the amendment brought within the ambit of the indictment other offenses obviously not within the contemplation of the grand jury when the indictment was returned; and the trial jury were permitted to determine whether one or more of these offenses were proved and to convict if that inquiry were resolved in the affirmative, even though not the offense which the grand jury had in view under the evidence submitted for their consideration. A failure of proof of the act selected by the State in support of the charge of the indictment is not a reason for searching out another separate and distinct offense in proof of the indictment. Where time is not of the essence, it need not be proved precisely as laid, but this does not mean there may be proof of an independent offense to sustain the indictment. Here, for example, the time fixed by the accusation is November 1, 1950, while the amendments extended the time in the one case to May 8, 1951, and in the other substituted a five week period five months later. It is requisite that the criminal act be charged in certain and identifiable form, if the accused is to have the substance of his constitutional right of defense and the opportunity to prepare for trial that is basic to that right, not to mention the danger of double jeopardy; and such was not the case here. The course taken constituted a denial of the essence of the constitutional guaranty.

Judgment reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.