42 N.J. Super. 138 (1956)
126 A.2d 17
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETER CAMPISI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 5, 1956.
Decided October 11, 1956.
*141 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. A. Howard Finkel argued the cause for appellant (Mr. Michael L. Mango, attorney).
Mr. John Romanition argued the cause for respondent (Mr. Charles V. Webb, Jr., Essex County Prosecutor, attorney; Mr. C. William Caruso, Special Legal Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant was tried and found guilty in the Municipal Court of Newark on two complaints respectively charging him with unlawful possession of a hypodermic needle adapted for the use of narcotic drugs by subcutaneous injection, in violation of N.J.S. 2A:170-77.1, and with the unlawful use of "a narcotic drug, to wit heroin," in violation of N.J.S. 2A:170-8. He was thereupon adjudged and sentenced as a disorderly person. Sentence was suspended on the first charge (the judgment of conviction mentions no term), and the one-year term in the Essex County Penitentiary imposed on the second charge was suspended and defendant placed on probation for one year. He promptly appealed from both convictions to the Essex County Court, which considered the matter de novo on the stenographic record below, R.R. 3:10-10(a). After extended argument the County Court judge concluded that the State had proved defendant's guilt *142 beyond a reasonable doubt, found him guilty as charged, and imposed the same sentences as had the municipal court.
Defendant now appeals to this court, claiming that the municipal magistrate should have granted his motions for dismissal of the complaints at the end of the State's case and at the conclusion of the entire case; and further, the County Court judge should have dismissed the complaints because the evidence was insufficient to establish guilt beyond a reasonable doubt.
The testimony is soon summarized. On the afternoon of January 22, 1956 Detective Lanno of the Newark Police, went to a flat in Newark where defendant lived with his parents, brother and sister, for the purpose of taking him into custody upon a West Orange burglary warrant. Not finding defendant at home, they proceeded to search the bedroom which he shared with his younger brother. In the clothes closet they found a jacket in the inside pocket of which they discovered a box containing a hypodermic needle, a carbonized spoon, an eyedropper, some cotton, a piece of soft white tissue, and a folded piece of newspaper containing white powder. In the inside pocket was a label with "Campisi, No. 801," and attached to the inside of the right sleeve was a cleaner's ticket with the name "Campisi." The detectives found defendant's father hiding underneath the bed.
Defendant arrived on the scene about an hour later. Asked by Lanno whether the jacket was his, he admitted that it was, but denied owning or knowing anything about the box. The detectives then took Campisi into custody on the burglary charge and brought him to the Newark Police Headquarters. There they turned the coat and box over to Detective Nazareta, a member of the Newark Narcotics Squad, when he arrived at the station soon after. He proceeded to question defendant as to the ownership of the articles. According to Nazareta, Campisi readily admitted they were his. Nazareta further testified he questioned Campisi as to his use of narcotics  this in the presence of the detectives and Federal Bureau of Narcotics Agent Olivera  and that he admitted last using *143 narcotics on January 9 or 10 in his home. However, some time later during the questioning Campisi denied being a user.
Nazareta then stripped defendant and proceeded to examine his body. He found small scabs in back of the upper right arm muscle, indicating subcutaneous injections. He also observed that Campisi exhibited the typical withdrawal symptoms of a narcotics user, characterized in this case as "slight"  clamminess of the hands, cold perspiration and a sallow complexion. Nazareta described the box as the "complete works" of a narcotics user. In his opinion, Campisi used narcotics, the basis of that opinion being "the reactions that he was showing, and the admission that he made, * * * plus the materials that were found here, which are only utilized by a user of narcotics."
Olivera, the federal agent, arrived at the police station some time after Nazareta had begun questioning Campisi. He testified that he asked defendant if he was a user of narcotics, and Campisi denied he was. Olivera then pointed out to Campisi that he was going through the withdrawal stages and observed his "excessive perspiration, clamminess of the forehead and hands, and a slight twitch of the muscles. You may call it restlessness. And the dilation of the eye pupils." These, he said, were symptoms always present in a narcotics user. He described the symptoms as mild because Campisi was a "skin-user" and not a "main-liner" (a narcotics user who injects the drug directly into the bloodstream through an artery or vein). He said that experience had taught him to differentiate between skin-users and mainliners by the severity of the withdrawal symptoms. Olivera gave it as his opinion, based upon 27 years with the Federal Bureau of Narcotics and hundreds of arrests, as well as the objective symptoms of withdrawal, that Campisi was a narcotics user. He did not examine defendant's body. When he asked Campisi whether the hypodermic kit was his, Campisi answered that he knew nothing about it.
Detective Roberts confirmed Olivera's testimony that defendant had said at police headquarters that he knew nothing *144 about the box. Neither Roberts nor Detective Lanno was asked whether anything was said to defendant at that time about using narcotics.
The only testimony about the nature of the white powder found in the hypodermic kit was that of Nazareta who said it was "suspected" of being heroin on the basis of a "field test," but that final analysis would come from the chemist to whom the powder was submitted. The chemist did not testify.
Campisi testified briefly after his motion for dismissal of the charges had been denied. He said he had never used narcotics; that the first time he had seen the box was at police headquarters; and that although he at first had admitted the jacket was his, he was not sure if it actually was. He referred to an eye operation undergone some five or six months before, said that he had been nervous all his life, and explained that the scabs on his arm were due to scratching an itch.
There were no other witnesses for the defense. At the close of the case the court denied defendant's motion to dismiss the complaints.
The first main point raised on appeal is that the State failed to prove a prima facie case of possession of the hypodermic needle, or to adduce sufficient evidence to establish possession beyond a reasonable doubt, and therefore the court should have ordered entry of judgment of acquittal at the close of the State's case or at the close of the entire case. R.R. 3:7-6. On a motion for judgment of acquittal the test is whether there is any legally competent evidence before the jury, or a judge sitting without a jury, from which an inference of guilt can logically and legitimately be drawn. State v. Rogers, 19 N.J. 218, 231-232 (1955); State v. McCarthy, 30 N.J. Super. 6, 9-10 (App. Div. 1954). We find no substantial basis for challenging the sufficiency of the evidence to support the charge of possession of the hypodermic needle. The fact that some of the evidence presented by the State may have contradicted other testimony so presented is not a valid reason for granting judgment of *145 acquittal. State v. Garzio, 113 N.J.L. 349, 353 (Sup. Ct. 1934), affirmed 116 N.J.L. 189 (E. & A. 1936).
Illegal possession may be constructive, as well as actual. The State need not show that the accused had the illegal drug on his person at the time of arrest, as defendant contends. People v. Martinez, 117 Cal. App.2d 701, 256 P.2d 1028 (Ct. App. 1953); People v. Torres, 98 Cal. App.2d 189, 219 P.2d 480 (Ct. App. 1950); 72 C.J.S., Poisons, § 8, p. 182. There is nothing in N.J.S. 2A:170-77.1 which requires the State to prove that the hypodermic needle was on Campisi's immediate person. Under all the circumstances, the court could legitimately infer that the hypodermic needle was under defendant's intentional control and dominion, and therefore in his possession.
Defendant contends that his alleged admission to the enforcement officers that the box and its contents belonged to him amounts in point of law to a confession to the charge of possessing a hypodermic needle, and since the confession was unsupported by corroboration of the corpus delicti, it could not be considered as evidence against him. A similar argument is made regarding his alleged admission of using narcotics. We pass the question whether the admissions of ownership and use are tantamount to confessions. We observe, however, that no challenge was made to the admissibility of these statements.
The rule applicable to defendant's present contention is set out in State v. Geltzeiler, 101 N.J.L. 415, 416 (E. & A. 1925). It was there held that a conviction based on a confession will not stand unless there is proof of the corpus delicti, and this is so not only in homicide cases but in all criminal cases. However, "full proof of the body of the crime is not required in addition to the confession, but sufficient proof thereof may arise out of the evidence corroborating some fact or facts in the confession itself." And see 7 Wigmore on Evidence (3d ed. 1940), § 2071, p. 396, and note 3. In the present case there was obvious corroboration of the alleged admission of possession and ownership of the hypodermic equipment in the circumstance that it was *146 found in defendant's jacket. Although the presence of the equipment in his coat is not in itself conclusive evidence that the box belonged to him, it is at least a circumstance from which an inference of possession could be drawn, and thus there was sufficient corroboration.
Defendant also suggests that the burden was on the State to show that the "confession" was voluntary, and cites State v. Tune, 13 N.J. 203, 215 (1953), as an endorsement of the view that a preliminary finding of voluntariness is essential to a fair trial under the due process requirement of the Fourteenth Amendment. But such requirement presupposes that there has been timely challenge to the admission of the evidence as being involuntary. In the absence of such timely objection, the trial court could properly assume that defendant agreed that the admissions or, as he calls them, confessions, were voluntarily given. The admission of that evidence did not constitute plain error under R.R. 1:5-3(c).
We find no merit in defendant's suggestion that the evidence on which the conviction was based amounted to no more than a scintilla. It was more than that; it was substantial.
Defendant's next principal point is that the State failed to establish by sufficient proof the offense of using narcotics, particularly in view of the alleged error in qualifying Detective Nazareta as an expert on narcotics. What has been said in discussing the charge of possession of a hypodermic needle, regarding the test on a motion for judgment of acquittal and any reliance which the trial court may have placed upon defendant's alleged admission of using narcotics, applies here.
Defendant stresses the fact that the only evidence as to use was Nazareta's testimony that Campisi had admitted taking his last shot on January 9 or 10, and that although Nazareta said Federal Agent Olivera was present at the time, Olivera testified that Campisi denied the use of drugs. Whether the admission was made before Olivera arrived at police headquarters, or was perhaps made out of his hearing, or whether we look at the matter in a light most favorable *147 to defendant and consider that there was a direct contradiction in the evidence relating to the admission of using narcotic drugs, at best we have merely the raising of an issue of fact upon which the lower tribunals were competent to make findings adverse to defendant.
However, there is more to the proof of user than just the admission allegedly made by Campisi to Nazareta. There is the expert testimony of both Nazareta and Olivera that when they saw Campisi at headquarters he exhibited the withdrawal symptoms of a skin-user. Apparently realizing the strength of this testimony, defendant directs his attack at the expertness of the two men and presently claims that neither was qualified to testify as he did. The attack on Olivera comes late. When the court asked counsel for defendant whether there was any question about his qualifications, he suggested that Olivera ought to be qualified. This was done. The court then inquired whether counsel was satisfied. No further objection was made. The fact is that Olivera, as noted, had 27 years' experience with the Federal Bureau of Narcotics, had participated in hundreds of arrests of narcotics users, had taken a number of special courses in narcotics at the Federal Bureau, and had testified as to withdrawal symptoms in many cases.
The objection to Nazareta's testimony at the trial in the municipal court was direct and positive. After determining that the witness had participated in some 2,000 arrests involving narcotics, had examined every person arrested, was well acquainted with withdrawal symptoms in narcotics users, and had testified in more than 100 cases, the court found that Nazareta was a qualified expert.
There is no reason in law for holding that the trial court was in error either as to Olivera or as to Nazareta. The rule is well established that the qualifications of experts are left to the discretion of the trial court, and its decision is conclusive unless clearly shown to be erroneous as a matter of law. Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950). There was sufficient in the evidence to justify the ruling made below as to the witnesses' qualifications.
*148 As to Nazareta, we may observe that opinion evidence may be given not only by a witness who qualifies as an expert, but by one who qualifies as a skilled witness. Such a witness is in possession, with regard to a particular subject or department of human activity, of knowledge and experience which are not acquired by ordinary persons. 32 C.J.S., Evidence, § 456, p. 94. Moreover, while nonprofessional witnesses are incompetent as to medical matters, generally speaking, they may state their opinion where they have special knowledge or experience. Id., § 480, p. 135. It is settled in this State that a person may be qualified to testify as an expert either by study without practice or by practice without study. Crosby v. Wells, 73 N.J.L. 790, 798-799 (E. & A. 1907); Fenias v. Reichenstein, 124 N.J.L. 196, 200 (Sup. Ct. 1940). And see generally, 2 Wigmore on Evidence (3d ed. 1940), § 555 et seq., p. 633 et seq. Both witnesses were sufficiently qualified  Nazareta on the basis of "practice" and Olivera on the basis of "practice" and training  to warrant their being permitted to testify as experts concerning a conclusion of use of narcotic drugs based upon their observation of Campisi's withdrawal symptoms. The weight to be accorded their testimony was, of course, for the trial judge.
We come, then, to defendant's last argument that the charge of using narcotic drugs was not sustained because the complaint specified the particular drug used by Campisi as heroin. We find no proof that the drug allegedly used was heroin. The chemist's report to which Nazareta referred, and which would have shown that the white powder found in the hypodermic kit was heroin, was never produced.
Defendant raised no objection in the municipal court on the ground of failure of proof, nor did he claim surprise. See R.R. 8:12-3 dealing with amendments of complaints in municipal courts. In the argument before the County Court his counsel did argue that there was no proof that the drug allegedly used by Campisi was heroin. In this court this failure of proof is dealt with in the setting of *149 defendant's attack upon the testimony of Nazareta and Olivera that Campisi was a user of narcotic drugs.
Although the failure to prove heroin is thus only tangentially raised, we shall deal with it as a contention that the State failed to prove the complaint, which charged that:
"* * * On or about the 9th or 10th day of January, 1956, at the said City of Newark, the said Peter Richard Campisi did use a narcotic drug, to wit heroin, as defined in Article I of Chapter 18 of Title 24 of the Revised Statutes (Food and Drug), the Uniform Narcotic Drug Law for a purpose other than the treatment of sickness or injury as prescribed or administered by a person duly authorized by law to treat sick and injured human beings, in violation of N.J.S. 2A:170-8."
The reference to the Uniform Narcotic Drug Act is to N.J.S.A. 24:18-2, where "narcotic drugs" is defined as meaning "coca leaves, amidone, opium, marihuana, isonipecaine and every substance not chemically distinguishable from them." The section then goes on to define each of the listed narcotic drugs.
Is the State's failure to prove that the white powder was heroin fatal to the conviction? The complaint was framed in the language of N.J.S. 2A:170-8, except for the specification of the narcotic drug, heroin. This reference to a specific drug may, in the circumstances of this case, be considered as immaterial, and the words "to wit heroin" in the complaint treated as surplusage.
In the early common law strict conformity was required between the allegations of an indictment or information and the proof, even in minor and immaterial respects. The strict technical rules formerly covering the subject have been greatly relaxed in recent years, either by statute or the views of the courts. The modern trend of judicial decisions is in the direction of determining questions of variance or failure to prove immaterial allegations in criminal proceedings on the basis of substance rather than technical reason. Cf. 18 U.S.C.A., Federal Rules of Criminal Procedure, § 52(a) and annotation 35; R.R. 1:5-1(b). And see the concurring opinion of the majority of the Indiana *150 Supreme Court in Madison v. State, 234 Ind. 517, 130 N.E.2d 35, 46 (1955), a case where the murder charge had been made more specific than was required by law, with the result that there was a variance in the proofs from the specific allegation of the indictment. The majority there said that it was not a correct statement of the principle involved to say that if the state sees fit to be more specific in the allegation of the offense charged than the law requires, the state is nevertheless bound to prove such detailed specification without variance upon trial. It said:
"* * * Unnecessary descriptive material in a charge is surplusage. It need not be established in the proof and if there is a variance in the evidence from such unnecessary particularity it does not vitiate the proceedings unless it is shown that the defendant has been misled or prejudiced thereby."
In Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the petitioner in certiorari claimed variance between the indictment and the proofs. Applying section 269 of Judicial Code (28 U.S.C., § 391), as it then stood (now restated in 18 U.S.C.A., rule 52(a)), the court said:
"* * * The true inquiry therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to `affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. [Citing cases]
Evidently Congress intended by the amendment to § 269 to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless. * * *"
And see Madison v. State, above; Underhill, Criminal Evidence (4th ed. 1935), § 85, p. 106; 2 Wharton, Criminal *151 Evidence (11th ed. 1935), § 1028, p. 1804; 27 Am. Jur., Indictments and Informations, § 178, p. 723; 42 C.J.S., Indictments and Informations, § 254, p. 1273. The two tests laid down in Berger reflect the constitutional guarantees afforded an accused by the Fifth and Sixth Amendments, respectively, of the Federal Constitution, and found in our own Constitution of 1947, Art. I, secs. 10 and 11: that the accused shall be informed of the nature and cause of the accusation, and shall not twice be put in jeopardy for the same offense.
The complaint here contained allegations sufficiently definite to inform defendant of the nature and cause of the accusation against him. Had the complaint omitted the reference to heroin, it would have been impregnable to attack. People v. Lee Foon, 275 N.Y. 229, 9 N.E.2d 847 (Ct. App. 1937). This is not a case where defendant was misled in the preparation of his defense by reason of such reference. His defense was not specifically directed to establish his non-use of heroin, and there is not a single word to indicate that he prepared his defense to meet the charge of using that specific drug. His defense was general  simply that he never used any narcotic drug at any time whatsoever. At no time has he claimed that he was surprised by the quality and direction of the State's proof. In short, he has not met the first requirement of the Berger case to establish that his substantial rights have been affected.
Nor has he met the second requirement of the Berger decision. The charge was sufficiently specific so that in any event, after jeopardy has attached, he will be protected if a second like charge is filed covering the same evidence, events or facts.
It therefore is evident that the specific reference to heroin in the complaint was, in the circumstances of this case, surplusage, and the failure of the State to prove heroin was not material or of consequence upon the trial.
The essence of the complaint was that defendant used narcotic drugs in violation of the statute. We have held that the State established such use. The judgment of conviction *152 entered in the County Court, here under review, was therefore proper.
The convictions are affirmed.
CONFORD, J.A.D. (dissenting, in part).
My dissent is from the conclusion of the majority in the appeal involving the charge and conviction of unlawful use of heroin. I join in the opinion of the court affirming the judgment of conviction of the charge of unlawful possession of a hypodermic needle. I dissent for the reason that the State charged the use of heroin by the defendant, and, as conceded by both the State and the majority of the court, failed to prove it. In effect, the majority take the position that the real offense here charged was the use of narcotic drugs, unparticularized; that there was circumstantial evidence that some sort of narcotics was used by defendant; and that the unproven specification in the charge of heroin as the drug used, being unnecessary to the charge, may be treated as surplusage and the conviction sustained on the basis that defendant has not been prejudiced in his defense by the absence of proof of use of heroin. With all deference I consider that this reasoning is erroneous and that the result deprived the defendant of his fundamental constitutional right, before conviction of a particular criminal offense, to "be informed of the nature and cause of the accusation." Constitution of 1947, Article I, paragraph 10.
Not only did the charge here in question lay to the defendant "the use of a narcotic drug, to wit heroin," but the conviction by the magistrate was of the same offense, identically described therein. The judgment in the County Court was "guilty as charged of violation of R.S. 2A:170-8 (unlawful use of narcotics) * * *." Moreover, the accusation specified that the offense took place "on or about the 9th or 10th day of January, 1956." It is thus clear that defendant was not being charged with a continuous offense of narcotic drug use, or of habitual use of narcotics, generally, but of the specific use on a particular occasion of a specific drug, "to wit heroin." And he was convicted of this offense *153 upon evidence that on January 22, 1956 a hypodermic needle and kit with some white powder (unidentified) were found in a jacket in his bedroom closet, that he "admitted use" to a detective, that he showed what two detectives regarded as "withdrawal symptoms" and that there were "small scabs" on his upper arm. The complaining detective testified that the powder found in the kit was "suspected to be heroin," that it had been chemically analyzed and that an "analysis will come from the chemist." No such analysis was produced by the State. For aught that appears in evidence, the purely circumstantial proof adduced by the State could have equally supported a finding that the drug which defendant allegedly used on the specified occasion was either "coca leaves, amidone, opium [of other kinds than heroin], marihuana, isonipecaine" or any other "substance not chemically distinguishable from them," to borrow the language of the Uniform Narcotic Drug Law, N.J.S.A. 24:18-2, by reference to which the penal statute, N.J.S. 2A:170-8, defines "narcotic drug," the unauthorized use of which is ordained disorderly conduct thereby.
It is entirely possible that defendant used other drugs than heroin on the dates specified in the charge; or that he used heroin on one or more occasions and other kinds of narcotics on others. The failure of the State to offer in evidence the chemical analysis it made of the white powder generates a persuasive inference that the powder was not heroin. I submit these observations not as reflections upon the guilt or innocence of the defendant in respect to violation of the statute, generally, but to make clear that a plurality of violations of the statute may be hypothesized of the evidence and that the particular charge here made against defendant purported to specify and accuse him of but one of the potential many offenses against the statute, designated as the use of heroin. Under basic principles long and sedulously safeguarded by the courts, it was the absolute burden of the State to prove defendant's guilt of that offense, a burden not to be met by proof sufficient only to support a finding of general guilt under the statute. State *154 v. Flynn, 76 N.J.L. 473, 475, 476 (E. & A. 1909); see State v. Grothmann, 13 N.J. 90, 97, 98 (1953); State v. Jefferson, 88 N.J.L. 447, 449 (Sup. Ct. 1916), affirmed 90 N.J.L. 507 (E. & A. 1917); State v. Jefferson, 19 N.J. Misc. 678 (Sp. Sess. 1941); State v. Caporale, 85 N.J.L. 495, 496 (Sup. Ct. 1914); State v. Tilton, 104 N.J.L. 268, 272 (Sup. Ct. 1928).
The principle under discussion had express application in State v. Flynn, supra, although the question arose obliquely. There was a conviction of the defendant for aiding and abetting the keeping of a gambling house, the indictment particularizing the offense thus: "`in this: That the said Wilbur J. Flynn did furnish, lease, or loan to the said C.W. the said slot machine so used, or to be used, for gambling * * *.'" Reversal was sought on the ground, among others, that the disjunctives in the specification of the offense invalidated it. Answering the contention of the State that the specific averment should be rejected as surplusage, as is done by the majority in the case before us with the designation "to wit heroin," Chancellor Pitney said (76 N.J.L., at pages 475, 476):
"But the frame of the indictment is such that in our opinion we may not properly reject the specific averment that follows; it being manifest, as we think, that the grand jury did not intend to charge any other form of aiding, abetting, or assisting than that which is thus specified, viz., that the defendant `did furnish, lease, or loan to the said C.W. the said slot machine so used or to be used for gambling.' * * *
With respect to the rejection of surplusage, the same author says (correctly, as we think): `Allegations which, although unnecessary, are descriptive of the identity of that which is legally essential to the charge cannot be rejected as surplusage.' 22 Cyc. 370."
The stress placed by the majority in the cause sub judice upon the lack of prejudice to the defendant in the failure of the State to prove use of heroin, presumed from the circumstance that defendant's position at the trial was that he used no narcotics of any kind, is misplaced when a constitutional right of a defendant in a criminal cause is involved. Responding to a like argument by the State in the Flynn *155 case, supra, where specific reliance was had upon section 136 of the Criminal Procedure Act (L. 1898, pp. 881, 915), which forbade reversal of a judgment upon an indictment "for any imperfection, omission, defect in, or lack, of form, or for any error, except such as shall or may have prejudiced the defendant in maintaining his defense upon the merits" [identical with R.R. 1:5-1. "Review on Criminal Appeals" (b)], and section 44 of the act, authorizing amendment of defects in indictments, the court said (76 N.J.L., at p. 477):
"It is manifest that the scope of a statute that authorizes amendments of indictments in matters of substance must be confined, to some extent, in subordination to paragraphs 8, 9, and 10 of article 1 of the Constitution of this state, which declare that in all criminal prosecutions the accused shall have the right to be informed of the nature and cause of the accusation, that no person shall be held to answer for a criminal offence unless on the presentment or indictment of a grand jury (with exceptions immaterial for the present purpose), and that no person shall, after acquittal, be tried for the same offence."
It is to be conclusively presumed that defendant is prejudiced when he is convicted on evidence which does not go to guilt of the specific offense the State chooses to charge him with and try him for. Cf. State v. Grothmann, supra (13 N.J., at pp. 94, 95). In that case the defendant was tried and convicted for impairing the morals of a child. The indictment specified a particular date for the offense. It appeared from the evidence there were a number of similar occurrences, and the trial court permitted amendment of the indictment to fix the date during a period later than the date first specified. The Supreme Court reversed. It said (page 94):
"But the effect of the amendments and the charge was to render the accused liable to conviction for an offense against each child not the subject of an indictment by a grand jury in accordance with the guaranty of Article I, paragraph 8 of the State Constitution of 1947 that no person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, save in certain cases not here pertinent. * * *

*156 * * * * * * * *
It is fundamental in the constitutional limitation that an indictment is not amendable by the court to charge an offense not found by the grand jury, either by a substitution of offenses or to supply substantive omissions. State v. Startup, 39 N.J.L. 423 (Sup. Ct. 1877). * * *

* * * * * * * *
Here, the amendment brought within the ambit of the indictment other offenses obviously not within the contemplation of the grand jury when the indictment was returned; and the trial jury were permitted to determine whether one or more of these offenses were proved and to convict if that inquiry were resolved in the affirmative, even though not the offense which the grand jury had in view under the evidence submitted for their consideration. A failure of proof of the act selected by the State in support of the charge of the indictment is not a reason for searching out another separate and distinct offense in proof of the indictment. * * *" (Italics supplied.)
So, too, in the present case. A failure by the State to prove the charged offense of use of heroin was not an occasion to license the fact finder to convict on the theory that the proof permitted either an inference that some other drug was used or that either heroin or some other drug was used; particularly where the conviction adjudicated was, expressly, that heroin was used. A charge expressly articulated in such disjunctives would have been bad. State v. Flynn, supra.
The invalidity of the hindsight test of whether the defendant was prejudiced from the standpoint of the nature of his defense is easily demonstrated. Suppose the defendant is indicted for murdering A and his defense is alibi. At the trial the proof is that B, not A, was murdered. Will a conviction of the defendant stand merely because the identity of the decedent was immaterial to the nature of the defense?
Some confusion has attended the formulation of the rules which have developed anent this subject because of indiscriminate assumptions that principles analogous to variance of proof in civil cases are here applicable. See 42 C.J.S., Indictments and Informations, § 250, pp. 1266, 1267. Yet the true rationale of the principle that a defendant may not be convicted of the particular offense under a general criminal *157 statute which the state chooses to lay to him by mere proof of criminal conduct not establishing guilt of the specific offense charged may be discerned in the rule from "Cyc.," quoted above, as set forth, with approval, in State v. Flynn, supra (76 N.J.L., at page 476). Another form of statement of the rule is:
"But no allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can ever be rejected as surplusage." 2 Wharton's Criminal Evidence (11th ed. 1935), § 1089, pp. 1910, 1911; In accord: 42 C.J.S., Indictments and Informations, § 250, p. 1267.
The true rationale is apparent. Matter descriptive "of the identity of that which is legally essential to the charge" normally operates so to particularize the specific offense charged as to segregate it from any other possible acts of offense against the same general criminal statute or prohibition and thus to subserve the constitutional mandate that the defendant be informed of the particular offense of which he stands charged. The specification, "to wit heroin," in the present case, did just that. It therefore became an indispensable part of the charge and proof thereof equally indispensable to a valid conviction.
But unwarrantably literal application of the rule, as stated, can lead to miscarriage of justice against the State in cases where there is no reasonably conceivable plurality of offenses in relation to the defendant, or where the descriptive averment does not actually differentiate or particularize the offense and where, therefore, no implication of the true rationale of the rule is presented. In such situations the more recent cases are wont to excuse the state from proof of descriptive trivia as "surplusage," or in irrelevant terms of lack of prejudice to substantial rights or "surprise." See 42 C.J.S., Indictments and Informations, § 254, p. 1274, n. 3; Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); State v. Wilson, 286 S.W.2d 756 (Mo. Sup. Ct. 1956); the majority concurring opinion in Madison v. *158 State, 234 Ind. 517, 130 N.E.2d 35, 46 (Sup. Ct. 1955). The Madison case, supra, is a good example of a correct result. The indictment charged that the defendant threw and exploded a "deadly weapon called a hand grenade then and there loaded with nitroglycerin" at the decedent, mortally wounding him. The proof was the grenade was loaded with TNT, not nitroglycerin. There was clearly only one offense, fully identified without regard to the contents of the hand grenade. The majority of the court correctly held the variance in proof not fatal to the conviction. The same analysis, in principle, distinguishes the Berger case, supra, cited by the majority.
The majority says, in purported demonstration that the "double jeopardy" test sustains the result below, that: "The charge was sufficiently specific so that in any event, after jeopardy has attached, he will be protected if a second like charge, is filed covering the same evidence, events or facts." But that assumption is not made in terms which are meaningful in this setting. The question here is not the sufficiency of the charge. It is the sufficiency of the proof in support of the charge, as laid. That was for the use of heroin. Suppose the defendant had been acquitted. There can be no doubt that he would nevertheless have been subject to a new charge of use of marihuana, though based on the same transaction, and that the plea of autrefois acquit would not have availed him as it would require different evidence to convict in the second prosecution than in the first, and vice versa, State v. Hoag, 21 N.J. 496, 502 (1956). Precisely such a result befell the defendant in Wilson v. State, 292 S.W.2d 188 (Tenn. Sup. Ct. 1956). A prior indictment charging the defendants with the theft of certain brass rollers was quashed at trial because the proof was that the rollers stolen were bronze. They were subsequently indicted for the theft of bronze rollers. The appellate court affirmed a denial of the plea of double jeopardy. In the present case, moreover, the judgment of conviction being for use of heroin, I am not persuaded that defendant is guaranteed against any further prosecution for use of another drug on the same *159 occasion. Thus the "double jeopardy" test additionally proves the injustice of the conviction we are reviewing.
I am satisfied from the record that the point under discussion was sufficiently raised both in the County Court and before us. In any case I conceive there is "plain error" affecting the substantial rights of the defendant, within R.R. 1:5-1(a).
I would reverse.