THE STATE, JOHN W. ACKERMAN, PROSECUTOR, v. JOHN M. ACKERMAN.

1. The provisions of section 30 of the Poor act, which impose on certain relatives the duty of relieving and maintaining certain poor persons in such manner as the Court of Quarter Sessions shall order and direct, are designed for the indemnity of the public against the maintenance of paupers.

2. The action of the court may most properly be invoked by complaint or petition of the overseer of the poor of the municipality liable to support the pauper; but if it acts upon a petition showing jurisdiction to make an order, its action will not be invalidated because the petition was presented by the pauper.

3. The relative to be affected by such an order must have reasonable notice and an opportunity to be heard. Such notice may be made by summons or rule to show cause.

4. An order under that section should show that the person in question either had been previously adjudged to be entitled to relief as a poor person, or that the Sessions have adjudged that he is such poor person and chargeable or likely to become chargeable as such.

5. Such an order must direct the relative to relieve and maintain the poor person in a specified manner, and fix and determine what sum per week he shall forfeit and pay if he refuse or neglect to do so.

6. The Sessions possess no power to require the relative who is directed to relieve and maintain the poor person to enter into bond to such pauper for the performance of the order.

On *certiorari.*

This *certiorari* has brought up proceedings of the Union Quarter Sessions and an order of that court requiring John W. Ackerman, son of John M. Ackerman, to pay to his said father $4 weekly (such payment to commence at the date of

filing the petition), and to give bond to his said father in the penalty of $500, conditioned for the payment of said weekly sum.

The proceedings and the facts on which the order was made sufficiently appear in the opinion.

Argued at November Term, 1892, before Justices VAN SYCKEL and MAGIE.

For the prosecutor, *Patrick H. Gilhooly.*

For the defendant, *Gilbert R. Lindsay.*

The opinion of the court was delivered by

MAGIE, J. The proceedings brought into review by this writ were taken under the provisions of section 30 of the "Act for the settlement and relief of the poor," approved March 27th, 1874. *Rev., p.* 834.

The proceedings were commenced by the petition of John M. Ackerman, representing that he was poor and an inmate of the poor-house of Woodbridge township, in Middlesex county; that he was old, and by reason of age unable to work, and that his only son, John W. Ackerman, resided in Union county and was able to relieve his father's necessities, but refused to do so.

The court allowed a rule to show cause, which was served upon John W. Ackerman, who appeared by counsel, and after testimony taken by both parties the order complained of was made.

It is first objected that the petition which initiated the proceedings was made, not by the overseer of the poor, but by the indigent person himself.

The provisions of the Poor act, on which the proceedings were taken, may be traced back in our legislation to section 17 of the "Act for the settlement and relief of the poor," passed March 11th, 1774. *Pat. L., p.* 31. That section re-enacted with some modifications the act 43 *Eliz., c.* 2, § 7.

3 *Burn Just.* 495. These provisions were not designed to establish any personal or private right to relief and maintenance from the relatives named therein, but were intended for the indemnity of the public against the maintenance of paupers. 2 *Kent Com.* *191. By the statute of *Elizabeth* and section 17 of the act in *Paterson* the penalty designed to enforce an order for the relief and maintenance of an indigent relative within the degrees named was expressly declared to be for the use of the poor. Although the supplement of June 10th, 1820 (*Rev. L., p.* 764), in modifying the provision as to penalty omits to expressly state that the penalty is to be appropriated to the use of the poor, I think there is a necessary implication to that effect from the language of section 3 and its position in an act for the relief of the poor. The like construction must be given to section 30 of the present Poor act.

The section does not, however, provide the manner in which the action of the Quarter Sessions shall be invoked. It may most properly be done by a complaint or petition of the overseer of the poor of the municipality liable to support the pauper. But the jurisdiction of the Sessions does not depend upon the mode in which the facts essential to jurisdiction are presented. The court might decline to act if the application appeared not to be designed for the protection of the public. But if it acts upon a petition showing jurisdiction, its action will not be invalidated because the petition was presented by the pauper.

It is next insisted that the proceedings are unsustainable because prosecutor was not brought into court by summons or other process, but only by a rule to show cause.

The act does not expressly require the issue of process or giving of notice to the relative who may be affected by the order of the court. But an order made when it did not appear that the person charged had been summoned or notified or was present or heard in respect thereto, was quashed. *Kiser* v. *Frankfort, Pen.* *410 o. Without doubt the relative against whom the order is applied for must have reasonable

notice and an opportunity to be heard. The form of a summons which could satisfy this requirement is given in *Corbin's Forms* 1457. But no reason can be perceived why notice, which could fully suffice, could not be given by obtaining and serving a rule to show cause, as was done in this case.

Moreover, prosecutor actually attended, called and examined witnesses and was heard. He cannot now make this objection.

The next contention is, that since the petition did not allege that petitioner had been adjudged to be entitled to relief from the township of Woodbridge as a poor person, and since it is admitted that proof was made in the Sessions that no such adjudication had been made, there was no jurisdiction to make the order in question.

The purpose of this legislation is, as has been shown, to indemnify the public against the support of paupers whose relatives, within specified degrees, have sufficient ability to support them. But the act does not require that, before the action of the Quarter Sessions can be invoked, the person must have already been adjudged to be entitled to relief. No doubt the order of the Sessions should be founded on their adjudication to that effect, if no previous adjudication has been made. *Vin. Abr., tit. "Poor," c. 7.* In an early English case it was held that it must appear that the person is poor within the meaning of the statute, and chargeable or entitled to relief and likely to become chargeable. *St. Andrews* v. *Mendez*, 1 *Ld. Raym.* 699. The form of orders in such cases, given in the early books of precedents in this State, indicate that an adjudication that the person is likely to become chargeable is sufficient. *Griffith's Treatise* 332; *Ewing's Treatise* 449; *Ewing's Justice* 435.

But the order before us cannot be supported against this objection. It does not contain any adjudication that the person in question was a poor person entitled to relief from the township of Woodbridge or likely to become chargeable thereto. It is admitted that no such adjudication had been made under the Poor act. Therefore the case in which the Quarter Sessions was authorized to make an order for main-

tenance by relatives did not appear as it should do on the face of the order.

The next objection is that the order does not conform to the requirements of the statute.

The order simply directs the son to pay the father a weekly sum.

The section in question imposes upon a son the duty of relieving and maintaining his poor parent, under the circumstances specified, in such manner as the Quarter Sessions shall order and direct, under penalty of forfeiting and paying for each week's neglect or refusal any sum said court may direct, not exceeding $6 per week.

It is obvious that, after the court had found and adjudicated that the facts existed on which it could act, it should have ordered and directed the son to relieve and maintain the father in the manner which it deemed proper and specified; and it should further have determined and fixed the sum which the son would forfeit and pay for every week's refusal or neglect. Such are the approved forms in the books before referred to. See, also, *Corbin's Forms* 1458.

This objection is fatal to the order.

Objection is also made to that part of the order which required the son to give bond to the father conditioned for the performance of the order of the court. The Poor act does not give any authority for such a direction, and counsel has not pointed out nor have I been able to find any statute justifying it. If this was the sole objection that part of the order might be set aside, but, under the other objection, the whole order must be vacated and annulled.

Under the circumstances it is deemed a proper exercise of the discretion of the court to refuse to allow costs to prosecutors upon this reversal.