46 N.J. Super. 112 (1957)
134 A.2d 10
JOSEPH GIERKONT, SR., COMPLAINANT-RESPONDENT.
v.
JOSEPH GIERKONT, JR., AND HELEN TINTLE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued July 1, 1957.
Decided July 26, 1957.
*114 Before Judges FRANCIS, STANTON and LEYDEN.
Mr. Marshall Crowley, County Counsel for Essex County, appearing pursuant to R.R. 1:2-8(d) (Mr. G. Hugh Courter, attorney for complainant-respondent and Essex County Welfare Board).
Mr. Eugene A. Liotta argued the cause for defendants-appellants.
The opinion of the court was delivered by FRANCIS, J.A.D.
This appeal is from an order of the Domestic Relations Court requiring appellants Joseph Gierkont, Jr. and Helen Tintle, who are brother and sister, to contribute weekly $9.10 and $7.30, respectively, toward the support of their indigent father.
The record discloses that since October 1, 1956 plaintiff, Joseph Gierkont, Sr., has been receiving $74 monthly through the Essex County Welfare Board as a disabled indigent person. On August 22, 1956 Gierkont, Sr. filed a complaint in the Juvenile and Domestic Relations Court charging his wife Sophie and his two children with failing to support him. The jurisdiction of the court to entertain such an action when instituted by the indigent personally was challenged in the trial court and again here. However, the argument has no substance. N.J.S.A. 44:1-140 supplies the authority. It says:
"The * * * children * * * of a poor, old, blind, lame or impotent person or other poor person * * *, shall, if of sufficient ability, at * * * their charge and expense, relieve and maintain the poor person or child in such manner as the overseer of the poor shall order or the court upon its own initiative or the information of any person, after notice to the person or persons chargeable and hearing the overseer, may so order." (Emphasis ours.)
And see Montwid v. Montwid, 11 N.J. Misc. 648 (Sup. Ct. 1933); Glassman v. Essex County Juvenile Court, 9 N.J. Misc. 519 (Sup. Ct. 1931); N.J.S. 2A:4-18(c).
*115 It will be observed from the phrase emphasized that the statutory burden of support may be imposed only if the children involved are of "sufficient [financial] ability."
The assessment against the plaintiff's daughter, Mrs. Tintle, is $7.30 weekly. The testimony shows that she is married and has two children. She has not been employed since her marriage but has lived with and been dependent entirely upon her husband. She had no income of her own. At the time of the first hearing it appeared that a bank account existed in her name containing $4,700. The uncontradicted proof is to the effect that the money belonged to her husband, came from his earnings and was merely kept in her name. Before the final hearing the husband, asserting his ownership of the fund, withdrew it and applied it in reduction of the mortgage on the home in which they resided. This property was purchased by the husband for $9,000. Status as a veteran enabled him to acquire title without any down-payment. The full price was represented by a mortgage. With the $4,700 amortization, the balance thereon was about $3,000. Title is held by the husband and wife as tenants by the entireties.
Under these circumstances, can a married daughter be compelled to contribute to the support of her indigent father? The answer depends on whether she can be said to be of "sufficient ability" to do so. Those words have not been construed in our State. However, in our neighboring state, New York, they signify that the person sought to be charged has sufficient for his own needs and something over and above. In re Miller's Estate, 64 N.Y.S.2d 258 (Surr. Ct. 1946). And in further explanation it has been said that he is entitled not only to enough for the immediate support for himself and his dependents but also to reasonable savings for sickness and old age. Matter of Diele's Estate, 187 Misc. 196, 61 N.Y.S.2d 397 (Surr. Ct. 1946). Certainly there would be less inducement to save a reasonable sum for old age or perhaps even for the education of children if the fund could be wiped out if public assistance is rendered to a parent.
*116 In the present case Mrs. Tintle did not own the bank account. Her only asset is a tenancy by the entireties with its incidental right of survivorship, in the home provided by her husband for the family. That estate is not sufficient to establish ability on her part to support her father. Kullman v. Wyrtzen, 266 App. Div. 791, 802, 41 N.Y.S.2d 682 (App. Div. 1943); Department of Public Assistance of the Commonwealth v. Sharago, 381 Pa. 74, 112 A.2d 162 (Sup. Ct. 1955). Moreover, the effect of the order under review is to place the burden of support on the indigent's son-in-law who has neither common law nor statutory obligation to do so. Bradley v. Zimmerman, 13 N.J. Misc. 580 (Sup. Ct. 1935). Accordingly, the judgment against the daughter is reversed. Cf. In re Claiborn's Estate, 51 N.Y.S.2d 543 (Surr. Ct. 1944); Matter of Bauer, 266 App. Div. 816, 41 N.Y.S.2d 626 (App. Div. 1943), affirmed sub nom. Bauer v. Byrne, 291 N.Y. 711, 52 N.E.2d 597 (Ct. App. 1943); Calhoun v. Calhoun, 256 App. Div. 672, 11 N.Y.S.2d 415 (App. Div. 1939); Town of Winchester v. Town of Burlington, 128 Conn. 185, 188, 21 A.2d 371 (Sup. Ct. Err. 1941).
This brings us to the issue of the legal propriety of the judgment against the son requiring the weekly contribution of $9.10 toward the maintenance of his father. He earns about $100 a week and no proof was adduced to demonstrate inability to meet the order.
The contention advanced for reversal is that since his father abandoned and deserted him during minority, the law excuses him from any duty of support now. Although the language of the statute relied on, N.J.S.A. 44:1-141, gives rise to some doubt as to whether it applies in a situation where the order for maintenance was issued by the Domestic Relations Court and not by the Director of Welfare, the parties and the trial court have treated it as applicable. In our view also the Legislature intended to permit it to be invoked whether the proceeding originates in the appropriate court or with the Director's order. See N.J.S.A. *117 44:7-19; Slocum v. Krupy, 11 N.J. Super. 81, 84 (App. Div. 1951).
The statute provides:
"* * * However, where it shall appear that the person or persons sought to be held were the child or children of the poor person and were abandoned and deserted by the poor person who failed to support * * * them during minority, the aforementioned County Court or municipal court may revoke the order of the director of welfare or reduce the amount of said order against such child or children, in proportion to the actual support and maintenance rendered by said poor person to the child or children sought to be held. * * *." N.J.S.A. 44:1-141.
Joseph and Sophie Gierkont were married in 1916. He turned out to be an irresponsible ne'er-do-well, who was more devoted to alcohol than to his wife and family. During their married life they either lived with the wife's mother or the mother was forced to pay their rent elsewhere. He began to drink heavily within a few weeks after the wedding, and even before the birth of Joseph, Jr. in December 1917 he had disappeared for two or three months at a time. After the birth he left ostensibly for a job at some unnamed place and did not return for two months. As can be imagined, support was inadequate and infrequent and the wife worked when she could. She testified that in the whole of their married life he might have given her a total of $500. This probably was somewhat of an underestimate, but his assertions to the contrary were feeble.
When Joseph was two years old, Gierkont was arrested for non-support and ordered to pay $6 weekly. Apparently they were separated at that time. He paid for a short time and then they resumed living together. The daughter, Helen, was born three years after Joseph, in 1920 or 1921. When she was 18 months old the father disappeared again; he was found, arrested and came back to the family after a period variously estimated by the wife at 2 1/2 to 4 1/2 years later. But apparently his record either for financial assistance or for remaining at home did not improve. At times on payday Mrs. Gierkont would wait in front of a factory where he *118 happened to be working at the particular time, only to learn that he had gone out the rear exit. When Helen was 2 or 2 1/2 years old, the mother went back to work and has worked ever since. It is worthy of note that despite the inordinate burden cast on her, she never sought public relief. There is some evidence that at one time the son and daughter had to be placed in a foster home for a few months on account of her illness; but no suggestion is made that their maintenance was supplied by any welfare agency.
Although the father's record for support is a sordid one, proof of specific periods of absences accompanied by total lack of support was not developed very well. The 2 1/2-to 4 1/2-year period referred to was described, and a docket of the Domestic Relations Court was introduced showing a non-support complaint in 1927; it recited that the parties had been separated then for three years. Mrs. Gierkont obtained a divorce in 1951 based on an allegation of desertion in 1929. (For this reason the complaint herein was dismissed as to her.) And there is some justification for the impression that down to 1929 Gierkont would return to his wife's home at intervals and she would take him in. This factor undoubtedly was the major influence in the trial court's finding that the abandonment and desertion of the children occurred in 1929. So far as the children are concerned that abandonment might be characterized more properly as the final one because the father never returned to their mother or made any contribution toward their needs thereafter. Obviously, a father might abandon his children completely and fail to support them for a period of time within the doctrine of Slocum v. Krupy, supra, 11 N.J. Super. at page 87, and then later repent and reassume his responsibility. Such abandonment ought to be considered in the evaluation of the proportion of the support of the father to be visited on the son under the statutory formula referred to above. In our judgment, in order to serve the manifest ends of justice, a finding is required in this instance that an abandonment of the children of at least 2 1/2 years' duration took place years prior to 1929. As described above, the *119 period was estimated at from 2 1/2 to 4 years, and certainly the minimum estimate at least ought to be accepted in the computation of the son's liability.
The son was 11 years of age in 1929. In fixing the share that he should bear of the cost of maintaining the father, the method was followed which seems to be in use in such cases. The share is assessed in the proportion that the years of support during the child's minority bear to 21 years. In this instance, having concluded that there was no abandonment until 1929, the court adopted as applicable the fraction 11/21 (rounded to 1/2) of the indigent's needs, which had been stated by counsel for the Welfare Board to be $79.10 monthly. This amount was simply a statement; no witness testified to it and it was improper to use it. In any event, the computation was made on the basis of one-half of $18.25 weekly, or approximately $9.10.
An official budgetary statement showing that Gierkont had been granted $74 monthly, or $17.08 weekly, was received in evidence over objection. There appears to be no doubt that such sum is being paid. The admissibility of the statement is not raised in appellants' statement of questions involved as set forth in their original brief and appendix. Under the circumstances, we do not feel that the objection to it should be considered.
As already indicated, study of the proof with respect to support of the son has convinced us that the period of 11 years used by the trial court is excessive. An additional minimum term of 2 1/2 years should be deducted, leaving at most 8 1/2 years, or 8 1/2/21 (approximately 40%) in computing the part of the $17.08 weekly to be assessed against him. On this basis, the judgment should be reduced to $6.80 weekly.
We find no other error in the case sufficient to warrant a complete reversal. Accordingly, the judgment is modified as set forth herein. No costs.