THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
CHARLES MONROE, DEFENDANT-RESPONDENT.

Argued April 21, 1959—Decided June 17, 1959.

*Mr. William C. Brudnick,* Special Assistant Prosecutor, argued the cause for planitiff-appellant (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney).

*Mr. Thomas M. Maher* argued the cause for defendant-respondent.

The opinion of the court was delivered by
FRANCIS, J.   A complaint was filed in the Juvenile and Domestic Relations Court of Bergen County under *N. J. S.*

2A:100–2, charging the defendant with desertion and non-support of his wife and minor children in necessitous circumstances. At the time of arraignment thereon, Monroe was advised by the court that he was entitled to counsel, to a reasonable time within which to prepare his defense, to have the matter considered by the grand jury and, if an indictment was returned, to a trial by jury. He was told also that, if he wished, such proceedings could be waived and the matter disposed of at once. After receiving this information, he executed a written waiver. The cause was then heard and the defendant was found guilty and sentenced to 1½ to 2 years in the State Prison.

On March 12, 1958 Monroe applied for a writ of *habeas corpus,* contending that the sentence was void because the Juvenile and Domestic Relations Court had no jurisdiction to hear the criminal offense charged under *N. J. S. 2A* :100–2. At that time he was also under a 3 to 5 year sentence for larceny, which term was to run consecutively with the one under attack. The writ was allowed and the Superior Court, Law Division, sustained the claim of lack of jurisdiction. As a consequence, an order was entered vacating the judgment of the Juvenile and Domestic Relations Court and directing that the time served under that conviction be credited against the larceny sentence. The State applied directly to this court for certification and we granted it. 28 *N. J.* 37 (1958).

The issue presented here has been discussed in other cases but it has not actually been decided. *State v. Bruneel,* 14 *N. J.* 53 (1953) ; *State v. Savastini,* 14 *N. J.* 507 (1954).

*N. J. S. 2A* :100–2 is a part of the Crimes Act. Violation thereof is declared to be a misdemeanor and punishable by "a fine of not more than \$1,000, or by imprisonment for not more than 3 years, or both." *N. J. S. 2A* :85–7. The offense is a criminal one and is manifestly within the constitutional protection against prosecution without grand jury indictment and trial by jury. *New Jersey Constitution* (1947), *Article* I, *paragraphs* 8, 9 and 10; *N. J. S.*

*2A* :4–30.5; *United States v. Moreland,* 258 *U. S.* 433, 42 *S. Ct.* 368, 66 *L. Ed.* 700 (1922).

■ The Juvenile and Domestic Relations Court is a tribunal of statutory origin and its jurisdiction is limited to the matters confided to it by the Legislature. Accordingly, to sustain the conviction in the present case it must appear affirmatively that the offense is within the ambit of that court's delegated authority. Jurisdiction over a crime not within the boundaries cannot be conferred by consent of the persons involved—as by waiver of indictment and trial by jury. *State v. Bruneel, supra,* 14 *N. J.* at *page* 58; *In re Daniecki,* 117 *N. J. Eq.* 527, 531 *(Ch.* 1935), affirmed 119 *N. J. Eq.* 359 *(E. & A.* 1936); *Richardson v. State Board, etc.,* 98 *N. J. L.* 690, 693 *(Sup. Ct.* 1923), affirmed 99 *N. J. L.* 516 *(E. & A.* 1924). Thus, recourse to the creating enactment must be had for the answer to a particular problem.

*N. J. S.* 2A :4–18 provides that the court "shall also have jurisdiction concurrently with such other courts as may have jurisdiction over the matter, to hear and determine in a *summary* manner disputes and *complaints:*

"*        *        *        *        *        *        *        *

c. Involving violations of subtitle 12 (disorderly persons law) of this title (§ 2A :169–1 *et seq*), and *chapter* 1 of *Title* 44, Poor (§ 44 :1–1 *et seq.*), *chapter* 6 and *chapter* 17 of *Title* 9, *Children* (§ 9 :6–1 *et seq.*, and § 9 :17–1 *et seq.*), and *article* 4 of *chapter* 5 of *Title* 30, Institutions and Agencies (§ 30 :5–33 *et seq.*), of the Revised Statutes, *together with any other laws or future enactments covering similar complaints or offenses, where the gravamen of the complaint under such laws or enactments is the failure or neglect of 1 member of the family to satisfy or discharge his legal obligations to another member of the family.*" (Emphasis added.)

It is plain from this excerpt that jurisdiction over the crime of desertion and non-support of wife and minor children under *N. J. S.* 2A :100–2 is not conferred by express reference. But it is equally plain that such transgression may be described as an offense where the "gravamen of the complaint  *   *   *  is the failure or neglect of one

member of the family to satisfy or discharge his legal obligations to another member of the family." *State v. Bruneel, supra,* 14 *N. J.* at *page* 58. Thus, the broad language of the statute may be said to draw that crime into the orbit of the court's jurisdiction if the phrases specifically dealing with the scope of the power to act bespeak such a grant. Here attention focuses upon the authorization to hear such cases in "a summary manner" concurrently with such other courts as may have jurisdiction. So the extent of the grant is to hear infractions of *N. J. S.* 2*A*:100–2 in that manner. Obviously, if the design of the language was to prevent or to eliminate indictment and trial by jury, the act would be violative of the constitutional guaranties specified above.

█ █ A legislative enactment carries a strong presumption of conformity with the organic law, and mere doubts are not sufficient to negate the presumption. If the language under study admits of two interpretations, one rendering the statute invalid and the other valid, the construction sustaining constitutionality will be adopted. *In re Village of Loch Arbour,* 25 *N. J.* 258, 264, 265 (1957). The doctrine takes on added force when there is a strong societal objective to be served by a declaration of validity.

█ *N. J. S.* 2*A*:100–2 *et seq.* stem from the Uniform Desertion and Nonsupport Act. The legislative scheme comprehends two proceedings, one civil and the other criminal, by means of a single complaint. *Section 2* defines the crime involved in the present case. Under *section 3,* at any time after a sworn complaint charging it is filed, "and before trial," the court having jurisdiction may enter a temporary support order and may enforce it by punishment for contempt. And on a plea of guilty before trial, at the trial or after conviction, instead of imposing the criminal sanction established for the misdemeanor offense, the court may execute a final order for future support and may place the husband or father on probation upon the posting of a bond with or without surety to guarantee compliance therewith. *Section 4.*

Manifestly, therefore, the primary purpose is to assure an adequate and enforceable support order for the welfare of the dependents and to avert the need for public maintenance. *State v. Savastini, supra,* 14 *N. J.* at *page* 516; 2 *Wharton, Criminal Law* (*12th ed.* 1932) § 1850. The criminal charge provides the coercive pressure to that end. In *Savastini* this court declared that under *N. J. S.* 2A:4–18(*c*), *supra,* the Juvenile and Domestic Relations Court has the authority to enforce the Uniform Desertion and Nonsupport Act, at least to the extent of entering support orders. No decision was rendered as to whether the criminal aspect can be entertained there. But Justice Brennan said:

> "None can gainsay the desirability of having both proceedings cognizable in the same court [rather than the civil phase in the Juvenile and Domestic Relations Court, and the criminal aspect in the County Court, which has general jurisdiction of criminal offenses]. The nature and objectives of the uniform act make it highly undesirable that the prosecution of the criminal phase of a complaint proceed in one court while the civil phase is determined in another court. This fractionalization can only tend to cumbersome administration of the law and impair its effectiveness to accomplish its beneficent and socially desirable ends." 14 *N. J.,* at *page* 519. (Insertion ours.)

██ Solution of the problem of the court's authority to act in this instance must depend upon the construction of the term "summary." A summary proceeding of the criminal law type is one where the controversy is disposed of in a prompt and simple manner, without the services of a jury and without indictment. *Bouvier's Law Dictionary* (*Cent. ed.* 1948) defines it as "A form of trial in which the ancient established course of legal proceedings is disregarded, especially in the matter of trial by jury, and, in the case of the heavier crimes, presentment by a grand jury." Blackstone distinguishes "summary" from "regular," the latter designation signifying a trial according to the ordinary and formal course of the common law. *Chase's Blackstone* (*3d ed.* 1890), 991; and see, *State v. Maier,* 13 *N. J.* 235 (1953); *Minard v. Dover, &c., Gas Co.,* 76 *N. J. L.* 132 (*Sup. Ct.*

1908); *Hankinson v. Trenton,* 51 *N. J. L.* 495, 496 (*Sup. Ct.* 1889); *Hoeberg v. Newton,* 49 *N. J. L.* 617, 618 (*Sup. Ct.* 1887); *Doughty v. Conover,* 42 *N. J. L.* 193, 197 (*Sup. Ct.* 1880); *State ex rel. Connolly v. Parks,* 199 *Minn.* 622, 273 *N. W.* 233 (*Sup. Ct.* 1937); *People v. Rogers,* 37 *N. Y. S.* 2d 254 (*Cty. Ct.* 1942); *State v. Williams,* 40 *S. C.* 373, 19 *S. E.* 5, 7 (*Sup. Ct.* 1894); *Caneperi v. State,* 169 *Tenn.* 472, 89 *S. W.* 2d 164 (*Sup. Ct.* 1936); *State ex rel. Daugherty v. Rose,* 167 *Tenn.* 489, 71 *S. W.* 2d 685 (*Sup. Ct.* 1934); *State ex rel. Mynatt v. King,* 137 *Tenn.* 17, 191 *S. W.* 352 (*Sup. Ct.* 1917); *State ex rel. Timothy v. Howse,* 134 *Tenn.* 67, 183 *S. W.* 510 (1916); *Cox v. Dixie Power Co.,* 81 *Utah* 94, 16 *P.* 2d 916 (*Sup. Ct.* 1932); *In re Hall,* 100 *Vt.* 197, 136 *A.* 24, 25 (*Sup. Ct.* 1927); 4 *Wharton, Criminal Law and Procedure* (1957), § 1476; *Black's Law Dictionary* (*4th ed.* 1951) 1604.

▮ What significance is to be given to the term "in a summary manner" in the statute under study? Since the customary connotation is trial without indictment and intervention of a jury, in the particular context a reasonable interpretation is that the Legislature intended to grant to the Juvenile and Domestic Relations Court the power to dispose of complaints under *N. J. S.* 2A:100–2 in that manner. If, however, as an incident thereof, the intention was to deprive the accused of the *right* to indictment and trial by jury, the bestowal of jurisdiction must fall because of its conflict with the constitutional guaranties. But there is no language inescapably indicative of a purpose to divest him of that *right*. And our judicial duty is to seek out and accept any other reasonable interpretation which will accomplish the legislative objective within the framework of the Constitution. Is there a reasonable course open which will permit the Juvenile and Domestic Relations Court to function in a summary manner and compatibly with the organic law? All courts must be said to have inherent power to provide themselves with appropriate procedures re-

quired for the performance of their delegated tasks.\* *Ex parte United States,* 101 *F.* 2d 870, 878 (7 *Cir.* 1939), affirmed *per curiam United States v. Stone,* 308 *U. S.* 519, 60 *S. Ct.* 177, 84 *L. Ed.* 441 (1939).

A moment's reflection will recall that the *right* to indictment and jury trial may be waived. *Patton v. United States,* 281 *U. S.* 276, 50 *S. Ct.* 253, 74 *L. Ed.* 854 (1930). Once such a waiver is voluntarily made by a defendant, trial may proceed in a summary fashion. This does not mean that all of the other safeguards of the criminal proceeding are put aside. Obviously, the accused retains the right to have the charge against him proved beyond a reasonable doubt, to be confronted by the witnesses against him, to cross-examine them and to present his own defense in the conventional manner. Therefore, when the Legislature conferred the authority to hear and determine summarily, was it not giving jurisdiction in such cases where the accused, after being advised of his constitutional guaranties, voluntarily waived them and agreed to an expeditious trial in the Juvenile and Domestic Relations Court? On the other hand, was it not intended that if the waiver was not given the jurisdiction did not attach and the cause remained subject to disposition according to the regular course of the common law in the court of general criminal jurisdiction, namely, the County Court?

The opinion in *McGinnis v. State,* 28 *Tenn.* 43, 49 *Am. Dec.* 697, 702 (*Sup. Ct.* 1848), bears upon the subject. There the defendant had been convicted of assault and battery and fined before a justice of the peace under an act "for the punishment of small offenses." Thereafter he was indicted for the same offense, the State contending that the act purporting to give the justice jurisdiction was unconstitutional because the offense was a crime, prosecution for which required indictment and trial by jury. It appeared that the statute conferred authority on the justice only in cases where the accused pleaded guilty and the offense warranted a fine of not less than $2 nor more than $50.

Arguments were made that the transgression was not an indictable offense but the portion of the opinion dealing with that phase of the case need not be discussed. In speaking of the circumstances under which the justice was permitted to act the court said:

"We confess ourselves utterly unable to perceive how either of the sections of the declaration of rights referred to, is in the slightest degree infringed by any one of the provisions of the foregoing act; or that they are in any respect incompatible with each other. How does this act 'put the defendant to answer' without his consent; or how, without his consent, deprive him of a trial by jury, as is the true import of the prohibitions contained in the two sections of the bill of rights in question? When brought before the justice upon warrant, if of sufficient legal discretion to be amenable to the law for his offense, and left to the exercise of his own volition, why may he not be permitted, in order to escape the delay and expense of a formal prosecution in the circuit court, to submit to a mere fine, and thereupon be discharged? There is nothing compulsory in the act. The privilege is for the ease and benefit of the defendant. It is at his election whether to avail himself of it or not. The justice cannot move a step under the act, unless the defendant prays the benefit thereof. The proposition that the privilege secured to defendants by this act is a violation of any constitutional right, is scarcely worthy of serious discussion. It involves the palpable absurdity that a party is deprived of a right which he voluntarily waives or surrenders."

Other evidence may be found to support the view of a grant of jurisdiction to the Juvenile and Domestic Relations Court in the event of voluntary surrender of the accused's basic guaranties. Prior to the revision of *Title 2A* in 1951, *R. S.* 2:204–1 declared that a husband or father who deserted or willfully refused or neglected to provide for and maintain his wife or family was a disorderly person. Prosecution was on complaint by the overseer of the poor. Trial was held before the local magistrate and a jury trial could be demanded. *R. S.* 2:204–2, 6. That act, *R. S.* 2:204–1 to 2:204–15, was not enacted in the revision. The offense involved in the present proceeding derives from *R. S.* 2:121–2, where it was classified as a misdemeanor. And upon incorporation in the revision as *N. J. S.* 2A:100–2,

the criminal character as a misdemeanor was retained. The reason for this seems obvious. Absconding husbands who depart from this State are subject to extradition, and in such proceedings the offense charged must be a crime. *United States Constitution, Article* IV, *Section* 2; *In re Cohen,* 23 *N. J. Super.* 209 (*App. Div.* 1952), affirmed 12 *N. J.* 362 (1953); *Uniform Criminal Extradition Law, N. J. S.* 2A:160–6 *et seq.; Uniform Reciprocal Support Law, N. J. S.* 2A:4–30.5. Under the last named act the criminal complaint for failing to provide support, which forms the basis for the Governor's interstate rendition demand when the defendant is out of the State, is filed in the Juvenile and Domestic Relations Court. *N. J. S.* 2A:4–30.2, 30.5. Obviously such complaint is one the gravamen of which is the "failure or neglect of 1 member of the family to satisfy or discharge his legal obligations to another member of the family," within *N. J. S.* 2A:4–18, *supra.* At any time after a complaint is made for violation of *N. J. S.* 2A:100–2 (as in this case) "and before trial, the court having jurisdiction may enter" a temporary support order. *N. J. S.* 2A:100–3. The evolution of this section throws light on our problem. Its source is *R. S.* 2:121–3, which said:

"At any time after a sworn complaint shall have been made charging an offense under *section* 2:121–2 of this title [now *N. J. S.* 2A:100–2, *supra*], and before the grand jury of such county shall have considered the complaint, * * * the *court of quarter sessions* of the county wherein the complaint is made, * * *"

may enter a temporary support order. (Insertion and emphasis ours.) In 1950 an amendment was adopted changing "court of quarter sessions" to "county court" and adding the Juvenile and Domestic Relations Court. *L.* 1950, *c.* 182. As shown above, the revisers excised the reference to the grand jury and the specific enumeration of the courts which could issue the temporary order. Patently such action was not taken to downgrade the offense, because its status as a crime was continued, and necessarily so for purposes of

extradition. Nor could it have been done with the intention of eliminating the ordinary requirement of indictment and trial by jury; it must be assumed that the revisers and the Legislature were aware of the constitutional safeguards thrown around a person accused of crime. A reasonable deduction is that the change was made to give greater emphasis to the authority of the Juvenile and Domestic Relations Court to hear such complaints in a summary manner when the accused *waived* the privilege of grand jury consideration and jury trial. Moreover, before trial, "with the consent of the defendant" a permanent order for support may be issued, *N. J. S.* 2A:100–4, and thus the ultimate and primary objective of support may be accomplished through the coercive effect of the complaint without ever putting the defendant to trial or convicting him of the criminal offense. Thereafter the criminal charge might be held in abeyance to continue the minatory pressure for obedience to the order. *State v. Savastini, supra,* 14 *N. J.* at *pages* 517; 518; *N. J. S.* 2A:100–5. From all of these statutory references it becomes apparent beyond doubt that the Juvenile and Domestic Relations Court was to play an important concurrent role with the County Court, the tribunal of general criminal jurisdiction, in receiving the complaint under *N. J. S.* 2A:100–2 and in its disposition. And finally, as if to reemphasize the purpose in exscinding the reference to the grand jury and the County and Juvenile and Domestic Relations Courts, the revisers continued as *N. J. S.* 2A:4–19 (the source of which was *R. S.* 9:18–15) the provision that:

"The juvenile and domestic relations court shall be vested with all the powers, rights and privileges incident to the hearing, determination and final disposition of all cases coming before it under *section* 2A:4–18 of this title, as are or may be exercised or enjoyed by any other court having jurisdiction over such cases."

Of course, this broad grant of authority must be read with the limiting language of 2A:4–18 giving the jurisdiction

to hear such causes "in a summary manner." And, as has been pointed out, the constitutional restrictions on the method of prosecution of criminal offenses serve to confine the exercise of the jurisdiction thus conferred to hear and determine the ultimate issue of guilt or innocence of the charge to cases where the accused has voluntarily waived his right to indictment and trial by jury.

The logic and social justice of a conclusion recognizing the jurisdiction of the Juvenile and Domestic Relations Court, at least to the extent indicated, is compelling. Moreover, it bespeaks proper judicial obedience to the legislative mandate to construe the act establishing the court "liberally * * * to accomplish its purposes." *N. J. S.* 2*A*:4–1. Support complaints of this type, considered in both their criminal and civil aspects, are designed to compel the husband and father to support his dependents and not primarily to subject him to criminal punishment for a past offense. *Jackson v. Hall*, 97 *So.* 2*d* 1 (*Fla. Sup. Ct.* 1957). The State is only incidentally interested in the prosecution under the statute. *People v. Elbert*, 287 *Ill.* 458, 122 *N. E.* 816 (*Sup. Ct.* 1919). The emphasis is nowhere on imprisonment; such result deprives the law of its basic objective and ought not to be imposed except in cases of recalcitrance. Note that even on conviction where a fine is imposed, the court may direct that all or part of it be paid to the dependents. *N. J. S.* 2*A*:100–2. Also, if the defendant is released on a bond guaranteeing payment of the sum fixed for support and he defaults, the sum recovered may, in the discretion of the court, be turned over to them. *N. J. S.* 2*A*:100–5. In extradition cases, if the husband or father submits to the jurisdiction of the out-of-state court and complies with the order of support, he "shall be relieved of extradition * * * during the period of such compliance." *N. J. S.* 2*A*:4–30.6. The specialized court, sensitive as it becomes through experience to the public policy manifested by the various statutes which have been discussed, is the ideal tribunal to deal with family maintenance cases. And in our judgment

the grant of authority to act therein must be given the widest possible scope within the limitations of reasonable construction of the legislative language.

For the reasons stated, we hold that the Juvenile and Domestic Relations Court has jurisdiction to hear and determine complaints under *N. J. S.* 2A :100–2 in cases where the accused voluntarily and understandingly waives his right to indictment and trial by jury and agrees to have the matter disposed of in that court. Therefore, the determination of the Law Division is reversed, the original judgment of the trial court is affirmed, and the writ of *habeas corpus* is discharged.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.