56 N.J. Super. 372 (1959)
153 A.2d 371
JOHN J. HEWITT, DIRECTOR OF WELFARE AND OVERSEER, TOWN OF BELLEVILLE, ESSEX COUNTY, NEW JERSEY, COMPLAINANT-RESPONDENT,
v.
ALBERT HOLLAHAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1959.
Decided July 1, 1959.
*376 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Emil Oxfeld argued the cause for appellant (Rothbard, Harris & Oxfeld, attorneys).
Mr. Thomas C. D'Avella argued the cause for respondent.
The opinion of the court was delivered by GAULKIN, J.A.D.
In this action, instituted by the Director of Welfare of the Town of Belleville in the Juvenile and Domestic Relations Court, defendant Albert Hollahan was ordered to pay his wife $106.40 per month, and he appeals.
*377 From time to time we have been compelled to point out that imprecise pleadings often lead to error. Cf. State v. Arbus, 54 N.J. Super. 76 (App. Div. 1959); Board of Education, Woodbridge Tp. v. Kane Acoustical Co., 51 N.J. Super. 319 (App. Div. 1958). The reason for this must be fairly obvious. A vague complaint, full of generalities, frequently indicates that the pleader has not thought through his cause of action, and does not yet know precisely upon what theory he will present his case. Consequently, unless he learns more about his case before he comes to trial, he may come without the evidence necessary to support the only theory upon which he can prevail.
A vague pleading in turn tends to confuse the adversary and the court. The defendant may understand plaintiff's pleading differently than the plaintiff does himself, while the court may make even a third interpretation of it.
We regret that we are unable to decide this appeal without pointing out that this case is an example of the foregoing. The complaint is by "Mr. John J. Hewett (Director) * * * residing at Dept. of Welfare * * *," who "being duly sworn on her [sic] oath deposes and says" (emphasis ours):
"* * * that Mr. Albert Hollahan defendant in this action * * * altho capable to do so has for the past several weeks refused and failed to provide adequate support and maintenance of his family consisting of wife  Catherine * * * contrary to `An Act concerning the Juvenile and Domestic Relations Court,' Revised Statutes, 1951 Title 44:1-1 to 44:1-160 Approved December 20, 1947 and the supplements thereto and amendments thereof.
Deponent therefore prays that the said defendant may be summoned to appear or that a warrant issue to answer said complaint; and that the defendant and all parties within the jurisdiction of the Court be dealt with as law and justice and the best interests of the wife may require."
We do not know what is meant by the reference to "Revised Statutes, 1951" in this context, nor does any part of Title 44:1-1 to 44:1-160 appear to have been approved December 20, 1947. More important, no defendant should be required to go through 160 sections of a statute, *378 plus all "the supplements thereto and amendments thereof," to find out what he is charged with, especially when the 160 sections and "the supplements thereto and amendments thereof" contain various and differing bases of liability. If by the reference to "An Act concerning the Juvenile and Domestic Relations Court, Revised Statutes 1951," and to a "warrant" as well as a summons, it is intended to include those provisions of Title 2A which come within the jurisdiction of the Juvenile and Domestic Relations Court, the confusion becomes really confounded. Cf. State v. Monroe, 30 N.J. 160 (1959). No defendant should be called upon at his peril to guess correctly whether he is being charged with civil or criminal liability, and why. Due process means more than mere notice to a person that he is a defendant  he is entitled to a complaint which informs him of the legal and factual basis of the charge which he is called upon to face. If it be intended to charge him under more than one statute or section, and different facts are required to prove each charge, the complaint should be in separate counts. R.R. 6:4-1, 6:6-3.
It has been pointed out that our Juvenile and Domestic Relations Courts, as well as our municipal courts, have come of age; and that they possess far greater powers of fine, imprisonment, and the imposition of money judgments than in days gone by. State v. Monroe, supra; Slocum v. Krupy, 11 N.J. Super. 81 (App. Div. 1951). Cf. State v. Mull, 30 N.J. 231 (1959); State v. Schrier, 30 N.J. 241 (1959); Krieger v. Jersey City, 27 N.J. 535 (1958). With that maturity, and with those powers, there has come to these courts the correlative responsibility to see to it that their pleadings and their procedures comport with the highest standards of due process. Cf. State v. Monroe, supra.
The appellant says in his brief that "objection was made to the complaint on the ground that it was too broad." This is not denied in respondent's brief. However, no stenographic record was made of the trial. Therefore, the trial *379 court made what is captioned in the appendix before us as "Order Settling Facts, Findings and Order to Pay," hereafter called "Findings." In it the trial court makes no mention of any motion directed to the complaint, so we do not have official knowledge that one was actually made. In any event, no change or narrowing was made of the complaint. On the contrary the trial court says in said "Findings" (emphasis ours):
"The complaint was brought under N.J.S.A. 44:1-1 to 44:1-160 and supplements thereto and amendments thereof. It is assumed that the particular sections involved includes Article 17, covering sections 44:1-139 to 143 and Article 18, covering sections 44:1-143 et seq."
In said "Findings" the trial court did not report upon what sections of the statutes it based the judgment. Apparently it was never clear to the litigants, throughout the trial, which sections they were litigating. Consequently, even before us the appellant argued that the trial court had based the judgment on N.J.S.A. 44:1-141, while the respondent was just as positive that it was based on N.J.S.A. 44:1-143. It therefore became necessary for this court, with the consent of counsel, to inquire of the trial court, which replied by letter that:
"From the facts and circumstances in the case I felt that Section 143, Chapter 1 of Title 44, Poor (N.J.S.A. 44:1-143) did not apply. Hence the court's decision was based under Sections 139, 140, and 141 as amended, of said Title and Chapter (44:1-139, 140 and 141)."
R.S. 44:1-140 provides that:
"The father, grandfather, mother, grandmother, children, grandchildren, and husband or wife * * * of a poor, old, blind, lame or impotent person or other poor person or child not able to work, shall, if of sufficient ability, at his or their charge and expense, relieve and maintain the poor person or child in such manner as the overseer of the poor shall order, or the court * * * may * * * order."
*380 R.S. 44:1-141, as amended by L. 1940, c. 55, and L. 1953, c. 42, provides:
"If any of the relatives mentioned in section 44:1-140 of this Title shall fail to perform the order or directions of the director of welfare of a municipality with regard to the support of the poor person, or if the poor person is supported at public expense, the County Court of the county wherein the poor person has a legal settlement, or the municipal court of the municipality wherein the person has a legal settlement, upon the complaint of the director of welfare or two residents of the municipality or county may summon the persons chargeable before it as in other actions, summon witnesses, and adjudge that the able relatives pay such sum for each poor person as the circumstances may require in the discretion of the court, and as will maintain him or them and relieve the public of that burden. * * *"
On the other hand, R.S. 44:1-143, as amended by L. 1953, c. 42, provides as follows:
"When a husband or father shall desert his wife, child or children or a woman shall desert her child or children and leave them or any of them as public charges, the director of welfare of a municipality may apply to the juvenile and domestic relations court; and the court may order and adjudge suitable support and maintenance to be paid and provided by the husband or wife, or either of them, to be made out of his property, and for such time as the nature of the case and circumstances of the parties render suitable and proper in the opinion of the court. * * *"
Appellant's first ground of appeal is that Mrs. Hollahan deserted him in 1954, and therefore he is under no obligation to support her under any of the above quoted sections. The trial court found as a fact "That the wife Catherine Hollahan left the home of her husband on November 14, 1954, being satisfied at that time that she wanted nothing more to do with her husband." In addition, in 1955 Mrs. Hollahan had filed a complaint against appellant for support, which was dismissed. In February 1958 Mr. Hewitt himself, as director, filed a complaint against defendant in the Municipal Court of Belleville under N.J.S.A. 44:1-147, charging defendant with desertion, and defendant was found not guilty.
*381 In a proceeding against a husband under N.J.S.A. 44:1-143, the fact that the wife was the deserter is a complete defense. We assume this is the reason the trial court "felt that Section 143 * * * did not apply" here. However, under N.J.S.A. 44:1-141 the wife's desertion or other wrongful conduct is no defense at all. Proceedings under the latter statute are not designed to establish any personal or private right in the pauper to maintenance from the relatives, but are intended for the indemnity of the public against the maintenance of the poor. Ackerman v. Ackerman, 55 N.J.L. 422, 424 (Sup. Ct. 1893). Consequently, the misbehavior of the pauper, even if she be a wife and the defendant the husband, is no defense. 70 C.J.S., Paupers, § 60, p. 112; Note: "Domestic Relations: Public Welfare: Statutory duty of wife to support husband," 25 Corn. L.Q. 300 (1940). For that reason, when it was desired to give children some exemption from the obligation imposed by this statute to support parents who had deserted them, it was necessary to amend it by L. 1940, c. 55, § 1.
Appellant also argues that the Juvenile and Domestic Relations Court has no jurisdiction to entertain a complaint under N.J.S.A. 44:1-141. We find no merit in this point. See N.J.S.A. 2A:4-18(c); State v. Monroe, supra; Gierkont v. Gierkont, 46 N.J. Super. 112, 114 (App. Div. 1957); Slocum v. Krupy, supra. Appellant argues that since N.J.S.A. 44:1-141 gives jurisdiction expressly and by name to "the County Court of the county wherein the poor person has a legal settlement, or the municipal court of the municipality wherein the person has a legal settlement," and does not mention the Juvenile and Domestic Relations Court, the Legislature intended that the latter have no jurisdiction. In Slocum v. Krupy, supra, a similar argument was directed against R.S. 44:7-19, as amended by L. 1940, c. 57, and by L. 1943, c. 164, but before it was amended by L. 1953, c. 42. We believe that the reasons *382 given in the Slocum case for the rejection of that argument apply here.
However, appellant makes the further point that the Legislature amended N.J.S.A. 44:7-19 by L. 1953, c. 42, to add the Juvenile and Domestic Relations Court by name as a court having jurisdiction under N.J.S.A. 44:7-19; yet, although section 10 of the same act (L. 1953, c. 42) amended R.S. 44:1-141 (to substitute County Court for Common Pleas and municipal court for family court), it did not add the Juvenile and Domestic Relations Court as a court having jurisdiction under that section. Appellant argues that this shows clearly that the Legislature intended the Juvenile and Domestic Relations Court to have jurisdiction over proceedings under N.J.S.A. 44:7-19, but not over proceedings under N.J.S.A. 44:1-141. We are not persuaded by this argument either. It seems to us that the Legislature amended N.J.S.A. 44:7-19 because its attention had been called to that section by the Slocum case, supra, whereas nothing had called its attention to the omission of the Juvenile and Domestic Relations Court by name in N.J.S.A. 44:1-141. Cf. N.J.S.A. 44:4-100, 101, 102; 44:5-19.9, 19.10. There is no good reason to believe that the Legislature intended to give jurisdiction under N.J.S.A. 44:1-141 to the municipal court and not the Juvenile and Domestic Relations Court. See also State v. Monroe, supra.
Finally, appellant contends that the "Findings" and the testimony reported therein by the trial judge are not sufficient to support the judgment. We agree.
Before it may order a person to help support a relative under N.J.S.A. 44:1-140, 141 the express language of the statute requires the court to find as a fact upon competent evidence that the relative is not only poor, but unable to work. Meeker v. Meeker, 61 N.J.L. 146, 147 (Sup. Ct. 1897).
In the case at bar the trial court made no such finding. When a trial court fails to make an essential finding *383 but reports competent, though conflicting, evidence upon which such a finding can be made, the appellate court may remand the case to the trial court to make it. However, in this case we do not deem it advisable to remand, first, because of the above-mentioned uncertainty and confusion in which the case was tried and, second, because no competent testimony was introduced of Mrs. Hollahan's inability to work. Appellant correctly says that her inability to work "is without the slightest medical substantiation" in the evidence. According to the "Findings" Mr. Hewitt testified that
"* * * his investigation disclosed that the wife has varicose veins in her legs, which are prone to hemorrhage when she is on her feet several hours daily, affecting her ability to secure employment. * * * That the client has been under the care of Doctor Louis M. Bull * * * for several years, chiefly due to attacks of gall bladder trouble * * * that she was examined by Dr. Openchowski psychiatrist in charge of the Behavior Clinic for the Essex County courts and that occupational therapy was recommended * * *. In July of 1958 the Magistrate * * * ordered her examined by a psychiatrist due to her behavior in court. She was examined by a doctor who recommended treatments at the Essex County Mental Hygiene Clinic. Her first appointment took place in August of 1958 at Overbrook Hospital. She was examined by Dr. Mary Buckley who decided she was in need of treatments and arranged weekly appointments. A tentative diagnosis was that the client is suffering from a psycho-neurotic condition without psychosis  anxiety type  adult immaturity. The Director testified that his basis for making an order was from his investigation that she was unable to work and that she had no means to subsist and that she was in need of medical care and that he determined she was a poor person."
The "Findings" also state that Mrs. Ridgeway, a social case worker for the Town of Belleville, testified that "her investigation disclosed that the client had been seen by Dr. Bull over a period of years with relation to gall bladder trouble, and that she had also been in touch with Dr. Buckley of the Mental Hygiene Clinic at Overbrook Hospital * * *."
*384 All this was obviously hearsay. That this was more than merely technically prejudicial appears from the hospital reports received in evidence by consent. The report from St. Barnabas Hospital was that no pathology of the stomach or duodenum was demonstrated by a gastro-enteritic X-ray series. It further shows that Mrs. Hollahan was uncooperative and was told that if she was dissatisfied she could leave the hospital, which she did. The report from the Essex County Mental Hygiene Clinic stated that Mrs. Hollahan had come to the clinic four times; that she was not psychotic; that she declined to come any more because "the distance is too great and it is inconvenient for her to come frequently"; and that "She appears convinced that there is no solution to her marital difficulties which have been persisting for the past fifteen years. She feels if her husband, Albert, can be forced to contribute to her maintenance that she will be able to live comfortably."
N.J.S.A. 44:1-141 and its forerunners date back to 1758. Stark v. Fagan, 90 N.J.L. 187 (E. & A. 1916); Ackerman v. Ackerman, supra. Until 1924 the maximum one could be called upon to contribute to aid a relative under this statute was $6 per week. Cf., L. 1911, c. 196, p. 397. In 1924 that limit was removed (L. 1924, c. 132), and now the Juvenile and Domestic Relations Court may award amounts as large as the Matrimonial Division of the Superior Court. There is, therefore, no more reason to permit hearsay in the Juvenile and Domestic Relations Court than in the Superior Court  perhaps even less, for as we have seen under N.J.S.A. 44:1-141 a defendant may be assessed for the support of a worthless spouse to whom the Matrimonial Division would give nothing.
The order appealed from is therefore reversed and a new trial is ordered, which shall begin with the amendment of the complaint to specify precisely what is charged.
Since the question may arise again, we would point out that the "Findings" report that defendant's "gross monthly income is $512.13." It is not clear from the *385 "Findings" whether the trial court took into consideration defendant's income taxes or other actual expenses. The "Findings" continue:
"[Hewitt] further testified that the Bureau of Assistance Standards, as issued by the State of New Jersey, sets up an exemption in the family of the defendant, which consists of himself and his daughter, the sum of $275.00; hence leaving a surplus of $237.13 per month."
This testimony, in this case, was incompetent. Gierkont v. Gierkont, supra, 46 N.J. Super., at page 119. Cf., R.R. 6:5-4. Worse, it uses as a base, in determining what defendant should retain out of his income, the amount which defendant would receive for himself and his daughter if they were on relief. This is completely unjustified. After all, defendant is (on this record) morally blameless. He has been steadily employed by the same firm for years. If he is living as should a reasonably prudent man with the same income, he may not be called upon to sharply reduce his standard of living to provide for his erring wife. In Gierkont v. Gierkont, supra, at page 115 Justice (then Judge) Francis points out that in New York, under a similar statute, the words "sufficient ability" to aid in the support of a relative "signify that the person sought to be charged has sufficient for his own needs and something over and above."
Reversed. No costs