75 N.J. Super. 405 (1962)
183 A.2d 426
NED J. PARSEKIAN, DIRECTOR OF THE DIVISION OF MOTOR VEHICLES IN THE DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WADSWORTH CRESSE, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1962.
Decided July 5, 1962.
*406 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Sidney S. Jaffe argued the cause for appellant (Messrs. Simon, Jaffe & Denstman, attorneys).
Mr. Robert B. Kroner, Deputy Attorney General, argued the cause for the respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
*407 The opinion of the court was delivered by GAULKIN, J.A.D.
This is an appeal by defendant Cresse from an order of the Director of the Division of Motor Vehicles in the Department of Law and Public Safety, suspending his motor vehicle driving privileges for one year. Cresse's automobile had collided with one driven by Charles Bailey on December 3, 1960, at about 1:35 P.M. in clear, dry weather. The collision occurred in the intersection of two public highways, Tanyard Road and Salina Road in Deptford Township, Gloucester County. Prior to the collision, defendant's vehicle was traveling in a westerly direction along Salina Road and the Bailey vehicle was driven southerly along Tanyard Road. As a result of the collision Bailey was injured and one Salvatore Villari, a passenger in the Bailey car, lost his life.
On or about March 10, 1961 defendant received notice that the Director proposed to revoke his driving privileges effective April 9, 1961 unless prior to that date defendant made written application for a hearing. The notice said the action was being taken because Cresse had operated "a motor vehicle in violation of the law; to wit: Section 39:4-144 R.S. (failure to stop at stop street) resulting in the death of one Salvatore Villari * * *."
Defendant demanded a hearing and one was had before a hearer on June 27, 1961. The hearer reserved decision. On June 30, 1961 he reported to the Director:

"CONCLUSION.
The defendant has been specifically charged with a violation of Title 39:4-144 R.S. (failure to stop at a stop street).
The testimony and evidence presented at this hearing establish that the defendant was in violation of the Stop Sign regulation. The immediate question is to not whether the defendant did stop his vehicle or not before entering the intersection but to the portion of Statute that specifies that a motorist shall proceed from a Stop Sign only after yielding the right of way to all traffic on the intersection street which is so close as to constitute an immediate hazard. * * *" (sic)
*408 The hearer recommended "that the defendant's driving privilege be revoked for a one year period."
Upon receipt of the report of the hearer, defendant filed exceptions thereto. The Director, in a written opinion, adopted the hearer's recommendation, holding:
"The defendant's testimony regarding the stopping of his vehicle before proceeding through the intersection remains uncontradicted. However, the charge against the defendant under R.S. 39:4-144 relates to all the provisions of the statute.
The stopping of the vehicle provided for in R.S. 39:4-144 is not the sole duty imposed. The statute further provides that a driver of a vehicle after bringing his vehicle to a complete stop at a `Stop Sign'
`* * * shall proceed only after yielding the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard.'
In addition to stopping a vehicle the above-quoted portion of the statute further imposes a duty to yield to all oncoming traffic. Therefore, when crossing the intersection the defendant was required to make an effective observation continuing if necessary, to observe and yield to any oncoming vehicles which were on the highway near the intersection. * * * I find as a fact that the observation made by Cresse was faulty and improper as well as the manner in which he proceeded through the intersection and that it constituted an immediate hazard to vehicles traveling on Tanyard Road.
Counsel, in his letter of exceptions, argues that the defendant was specifically charged by this Division with violation of R.S. 39:4-144 (failing to stop at stop street) and since no evidence was presented that the defendant did not stop, the State's charge has not been sustained.
In view of the foregoing discussion and question of the statute concerning the provisions of R.S. 39:4-144 the defendant had an additional obligation to make a proper observation and to refrain from proceeding through the intersection only until the crossing could be accomplished without causing a hazard to any oncoming vehicles.
* * * I find that the defendant was in violation of R.S. 39:4-144 in that he failed to yield the right-of-way to a vehicle on the intersecting street so close as to constitute an immediate hazard, thereby causing an accident to occur which resulted in the unfortunate death of Salvatore J. Villari."
Defendant argues that he was charged with failing to stop at a stop street; that he did not receive fair and adequate notice of the charge of failing to "proceed only after *409 yielding the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard"; and therefore it is contrary to N.J.S.A. 39:5-30 and a denial of due process to find him guilty of the latter charge. We agree.
N.J.S.A. 39:5-30, under which the Director undertook to revoke defendant's license, expressly provides that the licensee shall be given "due notice in writing of such proposed suspension, revocation or prohibition and the ground thereof." Bechler v. Parsekian, 36 N.J. 242, 257 (1961), has established that "in today's society a license to operate an automobile may be of vital significance and value to the licensee and `may not be taken away except by due process' * * * which requires that the licensee be fairly informed as to the charge against him and be afforded fair opportunity to be heard thereon," and that "the notice should direct his attention to the particular classification in which he falls." The Director does not dispute these requirements. His argument is that the notice given was sufficient to include the charge upon which defendant was found guilty.
Under N.J.S.A. 39:4-144, the failure to yield to oncoming traffic is not part and parcel of the offense of failing to stop at a stop street. They are separate offenses. One may be guilty of failing to come to "a complete stop at a point within 5 feet of the nearest crosswalk or stop line" (N.J.S.A. 39:4-144) even though he yielded to oncoming traffic. Conversely, even though he came to a proper stop at a stop street he would be guilty of violating N.J.S.A. 39:4-144 if he failed to yield to hazardously close oncoming traffic. Furthermore, it is to be noted that N.J.S.A. 39:4-144 covers offenses other than the two we have been discussing. Therefore, one is not properly charged with violating N.J.S.A. 39:4-144 without specifying what portion thereof is meant. In any event, the Director here specified "failure to stop at stop street," thereby plainly isolating that offense from the others encompassed by the *410 section and making it alone the subject of the charge and hearing. Since the Director himself said that the proof was uncontradicted that the defendant did stop at the stop street, the Director had no right or power under the notice given to find defendant guilty of a different charge. Cf. Rushin v. Board of Child Welfare, 65 N.J. Super. 504 (App. Div. 1961); State v. Campisi, 42 N.J. Super. 138 (App. Div. 1956), reversed 23 N.J. 513 (1957).
In State v. Campisi, the defendant had been charged with using "`a narcotic drug, to wit heroin,' in violation of N.J.S. 2A:170-8." That statute named a number of narcotic drugs the use of which was forbidden. The State failed to prove that the drug was heroin. A majority of this court affirmed (42 N.J. Super. 138), taking the position, as Judge Conford said in his dissent, "that the real offense here charged was the use of narcotic drugs, unparticularized * * * and that the unproven specification in the charge of heroin as the drug used, being unnecessary to the charge, may be treated as surplusage and the conviction sustained on the basis that defendant has not been prejudiced in his defense by the absence of proof of the use of heroin." Judge Conford maintained that this deprived defendant of his fundamental constitutional right to "be informed of the nature and cause of the accusation" because, as in the case at bar, "a plurality of violations of the statute may be hypothesized * * * and * * * the particular charge here made against defendant purported to specify and accuse him of but one * * *." The Supreme Court said (23 N.J., at pp. 518-519) that although "the complaint might have conceivably been good if it had omitted the reference to heroin * * * the defendant then would have been entitled to a bill of particulars and the State would have been bound to prove that the drug used was heroin." Therefore, having particularized in the indictment itself the drug used "the failure to offer proof that the white powder was heroin must result in a reversal * * *."
*411 That reasoning is applicable here, even though Campisi was a criminal case. First of all, as we have said, N.J.S.A. 39:5-30 requires "due notice in writing of * * * the ground" of the proposed revocation. Secondly, the Director proposed to revoke the license under N.J.S.A. 39:5-30 "for a violation" of one of the provisions of Title 39. Finally, as Bechler, supra, has established, even in a civil proceeding such as this, defendant is entitled to know precisely why his license is sought to be revoked, and not to have it revoked on charges of which he was not warned and against which he was given no opportunity to defend. Cf. Hewitt v. Hollahan, 56 N.J. Super. 372 (App. Div. 1959); Rushin v. Board of Child Welfare, supra. Therefore, even though the Director is not required to prove the violation beyond a reasonable doubt (Atkinson v. Parsekian, 37 N.J. 143 (1962)), he must still specify which violation he charges.
Nor is it any substitute for due process to say to the defendant that the revocation is for his own good (cf. Campisi, supra, 23 N.J., at p. 519) or that "[a]lthough the suspension or revocation * * * may appear to be punishment * * * [t]he primary object of the statute is to foster safety on the highway * * *." Atkinson v. Parsekian, 37 N.J., at p. 155. The fact remains that today the very livelihood of a man and his family may depend upon his license. Therefore, as we said in parallel circumstances in State v. Gagliardi, 57 N.J. Super. 238, 243 (App. Div. 1959), "we should not begrudge the few minutes it takes to phrase a complaint clearly."
The decision of the Supreme Court in Atkinson v. Parsekian, supra, confirmed that the statutes have given the Director great powers, and that the appellate courts have less control over his exercise of those powers than they have over the decisions of trial judges. With such powers there falls upon the Director the correlative responsibility to see to it that his procedures comport with standards of due process commensurate with the jeopardy to which the *412 citizen is exposed. Bechler v. Parsekian, supra. Cf. Hewitt v. Hollahan, supra.
The Director argues also that we should affirm because he has the right to suspend or revoke "on any reasonable grounds" (N.J.S.A. 39:5-30) and the evidence shows that he had reasonable grounds here. But the fact that N.J.S.A. 39:5-30 does so provide is all the more reason why the particular reasonable ground must be specified so clearly that there may be no question that the defendant understood it and could prepare to defend himself.
No purpose would be served by reviewing the testimony that was given before the hearer. Suffice it to say that, had there been prior notice, defendant might have produced other witnesses, made exact measurements, produced the "expert" that the Director said he failed to produce, made different preparation for trial, and organized and emphasized his evidence differently. He was not warned, and he did not know until he received the hearer's report, that he faced revocation for a reason other than the grounds stated in the notice.
The action of the Director is therefore set aside, without prejudice to his right to institute a new proceeding upon proper notice. Therefore it is not necessary to comment upon the other points raised in the appeal, except one which may arise again not only in this case but in other cases.
The defendant had cited to the Director certain cases decided by our Court of Errors and Appeals. The Director said in his opinion:
"Counsel, in his exceptions to the hearing officer's report, cites New Jersey authorities in an effort to buttress the effectiveness of the type of observation made by Mr. Cresse. However, an inspection discloses that they are intersection accident cases regarding the duty of a motorist who is about to enter an intersection and the type of observation which should be made in order to determine if other vehicles are on the highway * * *. The cases referred to were civil actions and the litigation did not result from any action taken by the Motor Vehicle Director pursuant to R.S. 39:5-30. *413 Additionally, none of the decisions cited by counsel related to violations growing out of an accident which produced a fatality."
The rules of law "regarding the duty of a motorist who is about to enter an intersection and the type of observation which should be made" may not be rejected by the Director merely because those rules were laid down in "civil actions and the litigation did not result from any action taken by the motor vehicle Director pursuant to N.J.S.A. 39:5-30," or because the cases did not involve "an accident which produced a fatality." Insofar as they are pertinent, the decisions of the courts are as binding on the Director as they are on judges.
Reversed. No costs.