94 N.J. Super. 518 (1967)
229 A.2d 274
ELENA REYES, A/K/A ELENA RANKIN, PLAINTIFF-RESPONDENT,
v.
JAIME REYES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1967.
Decided April 25, 1967.
*520 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mrs. Annamay T. Sheppard of the Newark Legal Services Project argued the cause for appellant.
Respondent joins in appellant's brief.
Mr. Paul E. Parker argued the cause for the Essex County Welfare Board, amicus curiae (Mr. John A. Matthews, Jr., attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a Juvenile and Domestic Relations Court order which directed him to pay $36 a week for the support of his three minor children, born of plaintiff out of wedlock and whose paternity he admits; placed him on probation for five years and ordered that within three days he leave the home he shares with plaintiff, the three children and plaintiff's child by an existent marriage. The notice of appeal states that defendant appeals from the whole of the final order "except that portion which may adjudge him the father of the three children named in the complaint."
Plaintiff has written the court stating that:
"Since I never had any grievance against Jaime Reyes and never charged him with any failure of duty toward his children, and signed the complaint in this matter only because of the direction of the Essex County Welfare Board to do so, I do not intend to file any brief or oppose his appeal in any way. Rather, I join in the application for relief made by him in his appeal." *521 The welfare board has at our request filed a brief amicus curiae.
We deal here with a situation which, at least in its procedural aspects, is most unusual. We were informed at oral argument that plaintiff's lawful husband was deported to Cuba 11 or 12 years ago, still lives there and, like plaintiff, would welcome a divorce. He had one child by plaintiff, who resides with her and apparently is supported by the county welfare board. There can be no question that the proceedings below were initiated at the instance of the welfare board, but for just what reason is not clear. It may be that plaintiff sought more support for her legitimate child, or that the agency's caseworker was checking into the situation with respect to that child. However that may be, the caseworker discovered that the parties were living together in the same house with the four children and induced plaintiff to file a complaint on April 2, 1966. Defendant was summoned to appear before the Juvenile and Domestic Relations Court on May 17 following to answer the complaint.
The complaint is captioned "Complaint (Support) (Consent Paternity)," the last parenthetical descriptive being typed in. The opening paragraph alleges that plaintiff is seeking support and maintenance from defendant for the three children, then six months, three years and ten years old. The complaint goes on to state that the parties reside in the same household, that defendant is not plaintiff's lawful husband and is the father of the children, and that he is employed. The following then appears:
"(x) He is the father of, and failed and neglected to support and maintain or adequately to support and maintain said illegitimate child or children. (N.J.S. 2A-4-18c; R.S. 9:16-2 et seq.)
Defendant fully supports."
The complaint concludes with a demand for an order compelling defendant adequately to support and maintain the children.
*522 Neither party was represented by counsel at the hearing, although the summons served on defendant stated he had that right. We have no doubt that the very limited means, education and experience of the parties resulted in their coming into court without representation. The welfare board appeared by counsel. Neither party requested that the testimony be taken stenographically pursuant to R.R. 6:2-10. Accordingly, the matter is before us on a statement of proceedings prepared by the trial judge. From it we learn that there was introduced in evidence by the welfare board a statement signed by defendant on March 21, 1966 admitting he was the father of the three children in question. Both plaintiff and defendant acknowledged that the children were the result of their illicit relationship. The welfare board attorney then introduced evidence of the children's needs, amounting to $36 a week. Defendant testified that he netted $76 weekly from his employment.
At the conclusion of the hearing the trial judge ordered defendant to pay $36 a week for the support of the children. He then went on to direct defendant to move out of the premises within three days. At this juncture defendant "defiantly" stated he had no intention of leaving plaintiff's home, and the court could not compel him to do so. The judge warned that if he did not terminate the relationship he would be in violation of the court's order, to which defendant replied in a loud voice, "I am not going to leave and you can lock me up now." The statement prepared by the trial judge then recites:
"The dignity of the Court having been impugned, the Court placed the Defendant on probation for five years, and directed that the payments of $36.00 a week for support be paid through the Probation Department, a copy of said Order being attached hereto."
The fact is, no contempt order was ever prepared or signed. In entering the order under appeal the trial judge made use of a printed form captioned "Order Adjudging in Contempt," *523 but the last three words were deleted. The opening paragraph reads: "A hearing having been held on the date of entry of this order in the presence of the defendant on an application to adjudge defendant guilty of contempt of this court and punished therefor," the italicized words being deleted. The next paragraph, dealing with violation of an existing support order, was not used. The form then continues (italics indicate typed inserts):
"The court, after due consideration of the application, proofs and argument presented at the hearing does hereby find and adjudge that defendant is guilty of the contempt charged in that he has wilfully violated the said Order; that on the date of filing of the aforesaid application defendant owed on the existing order of support, arrearages in the sum of $ ____;
It is, accordingly, ordered as checked below:
(x) The commitment of defendant to the County Jail of this County shall be and hereby is suspended on the conditions and under the provisions checked in this order.
(x) Defendant shall be and is (x) placed on probation and committed to the control, care and custody of the Chief Probation Officer of this County for a period of five years from the date hereof or until further order of the court () continued on probation as heretofore ordered.
Defendant shall report to said Chief Probation Officer as required by said Officer, and shall be subject to the rules and regulations of said Officer and to the further order of the court. (N.J.S.A. 2A:168-1 & 2).
(x) Defendant shall pay to the Probation Office of this County the sum of $36.00 per week for his 3 children whose paternity he admits required by the existing order of support, plus the sum of $ ____ per ____ on account of the arrearages of said order due as of the date hereof. Such payment shall commence May 17th, 1966 Plus hospital and medical Parties to separate in three days."
Some five additional paragraphs follow this language, each preceded by parentheses wherein an x could be inserted, but which were left blank.
The entire proceedings reflect loose practice, from complaint through to order. Although we recognize that the Juvenile and Domestic Relations Court quite often must deal informally with domestic relations matters, there must be some semblance of order, reason and due process to what it *524 does. What we have here is a hybrid order and an ambiguous complaint.
We first address ourselves to the order. The printed form used was completely inappropriate to the matter at hand; it was intended for use in a contempt proceeding, and not in one to determine paternity or support. After the words "Adjudging in Contempt" had been deleted from the caption, and the words "of contempt of" from the opening paragraph, we have the language quoted above. It states that the court, after having considered the matter at a hearing, finds and adjudges defendant "guilty of the contempt charged in that he has wilfully violated the said Order * * *." From what immediately follows, it is clear that the word "Order" must refer to an order of support. There was no such order in existence; indeed, there was no outstanding order of any kind that defendant could possibly have contemned.
Viewing the matter in its factual setting, we are of the opinion that if the proceedings brought at the instance of the welfare board had any purpose at all, it was to establish that defendant was the father of the three children born out of wedlock. Defendant had freely given the board a statement to that effect prior to the filing of the complaint, and it is for this reason that the complaint was captioned as one based on "Consent Paternity." The welfare board undoubtedly brought the complaint in order to have in its possession an order establishing paternity and fixing support  an order that could be used in the future if defendant attempted to escape his responsibilities. See, in this connection, the Uniform Reciprocal Support Act adopted by the 1952 Legislature, L. 1952, c. 197, as amended; N.J.S. 2A:4-30.1 to 30.22.
We next consider the complaint. Here, again, use was made of a form complaint, the parenthesis "(Consent Paternity)" being added to the caption. Although couched in terms of support and maintenance for the three children, it plainly states that "defendant fully supports" them  and these words were typed into the form. The complaint therefore *525 contradicts itself insofar as support and maintenance are concerned.
R.R. 6:4-1 provides, in pertinent part:
"(b) Every complaint for support shall clearly state the statute or statutes relied upon by the plaintiff. Sufficient allegations shall be set forth to apprise the defendant and the court of the probable proofs and evidence that will be submitted. The complaint shall state the names, addresses and ages of all parties, and their children, and shall indicate where and with whom the children are presently residing."
The complaint did not meet the requirements of the rule. In the first place, as just noted, it is self-contradictory: defendant is told that he has failed and neglected to support his children and in the very next sentence that he fully supports them. But more significant is the fact that the welfare board attempted to use a portmanteau form covering a wide range of statutory provisions. The form refers to N.J.S. 2A:4-18(c). That section confers jurisdiction upon the Juvenile and Domestic Relations Court to hear and determine, in a summary manner, disputes and complaints involving violations of the Disorderly Persons Act, N.J.S. 2A:169-1 et seq.; the Poor Act, R.S. 44:1-1 et seq., as amended; R.S. 9:6-1 et seq., as amended, relating to the abandonment, abuse, cruelty and neglect of children, and R.S. 9:17-1 et seq., as amended, relating to illegitimate children. The single definite reference in the complaint was to R.S. 9:16-2 et seq., dealing with the right of an illegitimate child to the support of its parents.
A person far more experienced and acquainted with the law than defendant would be hard put to determine just what he was being charged with under N.J.S. 2A:4-18(c). As this court observed in Hewitt v. Hollahan, 56 N.J. Super. 373, 377-378 (1959), with respect to a complaint charging nonsupport in violation of R.S. 44:1-1 to 160:
"* * * [N]o defendant should be required to go through 160 sections of a statute * * * to find out what he is charged with, especially when the 160 sections * * * contain various and differing *526 bases of liability. If * * * the reference * * * is intended to include those provisions of Title 2A which come within the jurisdiction of the Juvenile and Domestic Relations Court, the confusion becomes really confounded. Cf. State v. Monroe, 30 N.J. 160 (1959). No defendant should be called upon at his peril to guess correctly whether he is being charged with civil or criminal liability, and why. Due process means more than mere notice to a person that he is a defendant  he is entitled to a complaint which informs him of the legal and factual basis of the charge which he is called upon to face. If it be intended to charge him under more than one statute or section, and different facts are required to prove each charge, the complaint should be in separate counts. R.R. 6:4-1, 6-6-3."
We are aware that R.R. 6:4-1 (c) requires criminal charges to be brought in the name of the State and that this complaint was not  so that probably no criminal charge was intended. But we must read the complaint through the eyes of the kind of defendant likely to receive it  in many cases an unlettered person such as defendant here. He would not know what to expect in court, the complaint having assured him he was providing full support, and certainly could prepare no defense. It seems to us that the welfare authorities are in a position to provide better notices than this.
We hold that the complaint here involved was so general as well as inconsistent as to be patently violative of the letter and spirit of R.R. 6:4-1 and the most basic requirements of due process of law. It should have been dismissed out of hand as providing no basis for jurisdiction.
In fairness to counsel for the welfare board, he stated that he fully realizes the inconsistency and scatter-shot nature of the complaint used in this case. He assured the court that he has already initiated steps which will result in future complaints clearly and specifically stating just what the defendant is charged with and under what particular section of the law.
The order under appeal is reversed.